CASE 16.—ACTION BY THE GRAVEL SWITCH & LITTLE SOUTH TELEPHONE COMPANY AGAINST THE LEBANON, LOUISVILLE & LEXINGTON TELE- PHONE COMPANY AND OTHERS.—June 17, 1910.

# Gravel Switch & Little South Telp. Co. v. Lebanon, Louisville & Lexington Telp. Co.

Appeal from Marion Circuit Court.

I. H. THURMAN, Circuit Judge.

From a judgment of dismissal, plaintiff appeals.— Affirmed in part and reversed in part.

1.  Telegraphs and Telephones—Contracts— Termination —No- tice.—Where a telephone company sues another telephone company for breach of contract providing for the physical connection of their lines in a city to continue until 30 days after notice to terminate the agreement, an answer alleg ing that the latter company has only a license to maintain its system in the city, and that the city has revoked it, is a notice to terminate the contract, and no damages are re- coverable after 30 days from the filing of the answer.

2.  Contracts—Validity—Illegality.—A contract between a tele- phone company having only a license to maintain its sys- tem in the streets of a city and another telephone company for a physical connection of their lines at such city to con- tinue until 30 days after notice to terminate the agreement is not illegal.

3.  Contracts—Discharge by Imposibility of Performance.—The contract is binding, though the city revokes the license, and thus renders performance impossible.

4.   Corporations—Contracts—Liability of Stockholder.—A cor-
poration owning all the stock of another corporation is not
liable for a breach by the latter corporation of its contracts;
a stockholder not being liable for the obligations of the cor-
poration.

JOHN McCHORD for appellant.

FAIRLEIGH, STRAUS & FAIRLEIGH and HENRY S. McEL-
ROY for appellees.

OPINION OF THE COURT BY JUDGE HOBSON.

On September 21, 1894, the city council of Leban-
on, a city of the fourth class, by an ordinance granted
to B. T. Conway the right to construct and maintain
a telephone system along the streets and alleys of
the city. Conway on March 9, 1895, assigned his
rights under the grant to J. S. Coleman & Co., who on
the same day assigned them to the Lebanon, Louis-
ville & Lexington Telephone Company, and that
company erected and maintained a telephone system
in Lebanon under the grant, and had connections
with Louisville and a number of other places. The
Gravel Switch & Little South Telephone Company
and the Lebanon, Louisville & Lexington Telephone
Company on March 13, 1902, entered into the follow-
ing written contract: "This agreement made this 13
'ay of March, 1902, by and between the Lebanon,
Louisville and Lexington Telephone Co., (incorpor-
ated under the laws of Kentucky), of the first part,
and the Gravel Switch and Little South Telephone
Co. of Gravel Switch, Ky. (incorporated under the
laws of the state of Kentucky), of the second part,
witnesseth: Whereas, the second party desires to
connect its lines with the system of the first party at
Lebanon, Ky., now it is agreed as follows: (1) The
first party shall have the exclusive right to connect the

lines of the second party to points reached through the Lebanon exchange, and the second party shall make the connection for direct communications and shall so construct, equip, maintain and operate its lines as not to interfere with or impair the quality of services furnished through the lines connected as aforesaid. For communications over the lines of the first party the second party shall observe, and require its customers to observe, such regulations as the first party may make for the use of its lines. The second party shall not, during the continuance of this contract, operate, connect with, nor be interested in any telephone exchange or lines in competition with those licensed by the first party or the American Bell Telephone Company. (2) The lines of the first party shall connect with the lines of the second party at Lebanon, Marion county, Ky., in order to constitute thereby through lines to forward through messages between points located respectively on the lines of the first and second parties. For such through messages each party shall receive as compensation therefor its share of the through tolls, i. e., the established toll rate for each message to or from the point on its lines and Lebanon, Ky. The first party, its successors or assigns, may establish on its own lines telephone stations at points reached by the second party, and for through messages originating at such points, or in the reverse direction, whether passing over the lines of the first or second party, there shall be the same charge made and no other. For the purpose of connecting its lines to the Lebanon switchboard the second party, during the life of the contract, may attach without charge, one pair of wires to the poles of the first party within the limits of the city of Lebanon by the most direct route avail-

able from such limits to the Lebanon switchboard. Each party shall render to the other a statement of all such business and make full remittances on or before the end of every month for the month next preceding. The first party shall make no charge to the second party for messages in the reverse direction. The second party shall pay all taxes and assessments of every kind on account of business done over its said lines however assessed. (3) In case of any failure of payment or other violation of any of the terms of this agreement by the second party, continued without remedy or repair for thirty days after written notice or demand by the first party, or in case the second party shall become bankrupt or insolvent, the first party may, at its option, terminate this contract by written notice to the second party (or to those in charge of its principal office), and may at any time within thirty days after such termination take possession of and operate said lines and all their belongings, and at any time within three months from such taking, it may return all the property of the second party so taken, paying a reasonable compensation for the use thereof, or may retain the same as its own property, paying therefor within four months from the taking a reasonable price not exceeding the actual cost. (4) This contract shall be inoperative and of no effect until the Lebanon, Louisville and Lexington Tel. Co., its successors or assigns, shall have constructed its pole route and lines over the highway between Lebanon, Ky., and Danville, Ky. (5) This contract shall remain in full force until the expiration of thirty days after written notice of intention to terminate the same given by either party to the other, unless sooner determined as herein provided.''

The two companies worked along under this contract until July 10, 1908, at which time the city council passed an ordinance requiring the Lebanon, Louisville & Lexington Telephone Company to remove its poles and wires from the streets and alleys of the city for the reason that the grant to Conway was not made in the manner provided by section 164 of the Constitution, the franchise not having been sold to the highest bidder. Thereupon the Lebanon, Louisville & Lexington Telephone Company ceased to do business under the contract with the Gravel Switch Company, and this suit was brought by it to recover damages for the breach of the contract. The Cumberland Telephone & Telegraph Company was made a defendant to the petition on the ground that it owned all the stock in the Lebanon, Louisville & Lexington Company, and was operating its lines under that name, but on its own account. The defendants filed answer setting out in detail the facts we have stated. The plaintiff filed a reply which admitted these facts. The court sustained a demurrer to the reply, and, the plaintiff failing to plead further, its petition was dismissed. From this judgment it appeals.

It is alleged in the petition that it was provided in the written contract that it should remain in force until the 1st day of April, 1912, and thereafter until the expiration of 30 days after written notice of intention to terminate it given by either party to the other. But, as will be observed from the writing above quoted, it contains no such stipulation. It does not specify how long the contract shall continue except that it provides that it shall remain in force until the expiration of 30 days after written notice of intention to terminate it given by either party to

the other. It does not appear in the record that this written notice was given until the answers were filed in this case. These answers may be taken as a written notice to terminate the contract, and, under the record as here presented, no damages can be recovered for any violation of it after 30 days from the time the answers were filed.

It is insisted for appellees that the contract was illegal, and, being illegal, no action can be maintained on it. The grant to Conway conferred upon him or his assignees no right to use the streets and alleys of the town. The city council of Lebanon by an ordinance approved February 3, 1903, regulated the charges to be made by the Lebanon, Louisville & Lexington Telephone Company, and how it was to use its streets. This company under these ordinances was simply a licensee upon the streets and alleys. Its right to use the streets and alleys might be withdrawn by the council at any time, and was withdrawn by the ordinance of July 16, 1908. But it does not follow from this that the contract between it and the Gravel Switch Company was illegal in the sense that no action may be maintained upon it. If a person who has a license from A. to use his land for that purpose makes a contract with B. to haul out his logs at so much a thousand, it will be no defense for him when sued upon the contract to say that A. withdrew his license, and that he did not haul out the logs because this was the only way to get them out and he could not lawfully enter upon A.'s land after the license was withdrawn. It was incumbent upon him before making the contract to know that he could use A.'s land, and he took the risk when he made the contract without a right from A. to use his land. The streets and alleys of the city are under the control

Vol. 139.]     APRIL TERM, 1910.     157

Gravel Switch & L. S. Telp. Co. v. Leb., Lou. & Lex. Telp. Co.

of the council.   When the council withdrew its license, the position of the telephone  company was not otherwise than it would have been if  a private person over whose land it had a license to pass had withdrawn the license.  It was incumbent on the Lebanon Telephone Company before making the  contract with the Gravel Switch Company, to put itself in a position to carry out its contract, or, if it found it could not do so, to give 30 days' notice of its determination to terminate the contract as provided by section 5.  In 2 Parson on Contracts, side page 673, the rule is thus stated: "If one for a valid consideration promises another to do that which is in fact impossible, but the promise is not obtained by actual or constructive fraud, and is not on its face obviously impossible, there seems no reason why the promisor should not be held to pay damages for the breach of the contract; not, in fact, for not doing what cannot be done, but for undertaking and promising to do it. So, if it becomes impossible by contingencies which should have been foreseen and provided against in the contract, and still more if they might have been prevented, the promisor should be held answerable. So, if the impossibility applies to the promisor personally, there being no natural impossibility in the thing, this will not be a sufficient excuse."

In Beebe v. Johnson, 19 Wend. (N. Y.) 500, 32 Am. Dec. 518, the defendant agreed to secure to the defendant in Canada the exclusive right to an invention, a thing he could not do under the laws of the province.  He was held liable.  The court, after showing the contract was not illegal  or absolutely impossible of performance, said: "There is then nothing in the case to take it out of the rule in Paradine v. Jane, Al. 27, as expounded by Chambers, J.,

in Beale v. Thompson, 3 Bos. & Pul. 420, namely, if a party enter into an absolute contract without any qualification or exception, and receives from the party with whom he contracts the consideration of such engagement, he must abide by the contract, and either do the act or pay damages; his liability arising from his own direct positive undertaking." In a note to that case many other authorities are collected. There was nothing here illegal in the contract when made. The subsequent withdrawal of the license by the city was a thing the defendant should have protected itself against when it made the contract. It knew its rights. It made the contract. It took the risk. The Cumberland Telephone & Telegraph Company is not a party to the contract, and, although it may own all the stock in the Lebanon, Louisville & Lexington Telephone Company, it is not liable for the breach by that company of its contracts. A stockholder in a telephone company is not liable for the obligations of the company.

The judgment dismissing the plaintiff's petition as to the Cumberland Telephone & Telegraph Company is affirmed; but the judgment dismissing the petition as to the Lebanon, Louisville & Lexington Telephone Company is reversed, and cause remanded for further proceedings consistent herewith.