## HERMAN HOKANSON v. WESTERN EMPIRE LAND COMPANY.[1]

January 14, 1916.

Nos. 19,531—(199).

**Land contract — vendor and purchaser — failure of vendor's agreement to resell.**

Attached to and made part of a contract to purchase land was an agreement of the vendor to resell the land by certain dates, at a certain price, provided the vendee gave notice by a specified prior date of his desire to have it resold. The vendee gave the notice, but the vendor failed to resell. In this action to recover damages for a breach by the vendor of the agreement, it is *held:* The agreement is not inherently impossible of performance; the inability of the vendor to find a third

[1] Reported in 155 N. W. 1043.

person willing to buy at the required price does not render the contract void as being impossible of performance; nor should the agreement be so construed that the only consequence of a failure to resell would be an extension of time upon the deferred payments, to be made by the vendee for the land, until a resale.

Action in the district court for Hennepin county to recover $2,800 for breach of the contract mentioned in the opinion. From an order sustaining a demurrer to the complaint, plaintiff appealed. Reversed.

*Norton & Norton,* for appellant.

*Booth & McDonald,* for respondent.

HOLT, J.

The action relates to a written contract, executed by the parties hereto, by the terms of which defendant, as the party of the first part, agreed to sell ten acres of land in the state of Washington, and plaintiff, as party of the second part, agreed to buy the same and pay $5,000 therefor; thirteen hundred dollars of which was paid when the contract was signed, and $740 was to be paid on or before June 27, 1913, and the same amount on the twenty-seventh of each succeeding June until all was paid. The land was planted to fruit trees. The contract is replete with provisions requiring punctual and strict performance by the purchaser of his part of the agreement, but these need not be particularly referred to. In the contract is found this provision, which furnishes the basis for the action: "The agreement to resell this land, according to attached agreement, is hereby made a part of this contract, and if second party gives due notice of his desire to sell, as per agreement, first party will extend the deferred payments on this contract until such sale is made." Attached to the contract is the agreement referred to, being in the form of a letter signed by defendant and addressed to plaintiff, the part bearing on this controversy reading as follows: "If you decide that you wish to sell this land during the spring of 1913, we agree to sell same for you by June 1, 1913, at a net price $600 per acre, providing you notify us of your decision to sell by March 1, 1913. It is further agreed that if you should decide to sell this land during the season of 1914, we will sell it for you by June 1, 1914, at a net price of $600 per acre, providing you notify us of your desire to sell by March 1, 1914.

"In making such sale for you, it is agreed and understood that we shall receive all amounts for which the land may be sold over and above the within mentioned net prices, as our commission for making the sale. This is with the understanding that you will see that the orchard is well cared for and the value not affected by any neglect in the care of the tract during the year 1913."

The complaint, after stating the foregoing, setting out the contract *in haec verba,* alleged that prior to March 1, 1913, plaintiff decided that he desired to sell the land during the spring of 1913, and that by and before March 1, 1913, he duly notified the defendant of this decision to sell, and has always since been ready, willing and able to sell and convey all his interest in said land upon a sale thereof by defendant, but that defendant has wholly failed to sell. Further allegations are made of performance by plaintiff, of all the terms to be by him performed, and that prior to the commencement of the action he relinquished possession of the land. The action is said to have been begun in 1915, but the record does not show the date. The court sustained a demurrer to the complaint, and plaintiff appeals.

The inducement and part consideration for plaintiff's entering the contract to purchase the land was, no doubt, the undertaking by defendant to resell the same for the price and by the time stated in the letter attached to and made a part of the agreement. The argument is made that, since defendant's ability to sell the land by a certain time and for a specified price depended on the willingness to buy of a third party over whom it had no control, therefore the contract should be held impossible of performance and invalid. We do not think such to be the law. There is nothing in the undertaking inherently impossible. Purchasers are found daily for lands at varying prices. There is nothing so unreasonable either in the price fixed or the limit of time within which to make the sale that performance may be said to have been considered, by the parties, beyond the possibility of attainment, when the contract was made. A contract which appears possible of performance when made does not become invalid or unenforceable, because conditions afterwards arise which render performance impossible. If there had been a speedy rise in the market value of this land so that it would have been worth $1,000 per acre by March 1, 1913, would there have been any

difficulty for defendant to. have sold it for $600 or $650 per acre? To make a contract invalid or unenforceable the thing agreed to be done must be impossible on its face, not merely improbable or impossible to the promissor. Cowley v. Davidson, 13 Minn. 86 (92); Stees v. Leonard, 20 Minn. 448 (494); Anderson v. May, 50 Minn. 280, 52 N. W. 530, 17 L.R.A. 555, 36 Am. St. 642. The inability to control the actions of a third party, whose co-operation is needed for a performance of the undertaking, is not considered a legal impossibility avoiding the obligation. To this proposition the following authorities may be cited: 3 Elliott, Contracts, § 1916; Stone v. Dennis, 3 Port. (Ala.) 231; Wareham Bank v. Burt, 5 Allen (Mass.) 113; Van Etten v. Newton, 15 Daly, 538, 6 N. Y. Supp. 531, 7 N. Y. Supp. 663, 8 N. Y. Supp. 478; Beebe· v. Johnson, 19 Wend. 499, 32 Am. Dec. 518; Gravel Switch E. L. S. Tel. Co. v. Lebanon, L. E. L. Tel. Co. 139 Ky. 151, 129 S. W. 559; The Harriman, 9 Wall. (U. S.) 161, 19 L. ed. 629; Reid v. Alaska Packing Co. 43 Ore. 429, 73 Pac. 337, and Watson v. Blossom, 4 N. Y. Supp. 489. Failure to resell, according to the contract, constitutes a breach thereof entitling plaintiff to damages. These are fixed by the terms of the contract, and do not give rise to any difficulty.

It is also contended that the contract, properly construed, does not give damages for the alleged breach, and that a failure to make a sale has no other consequence than suspending the deferred payments until a sale is made. The only basis for the contention is found in the quoted part of the main agreement to the effect that, if plaintiff gave due notice of his desire to sell, defendant would extend the deferred payments until a sale was made. We think the reasonable meaning of this provision is that, since the contract calls for strict and punctual performance on the part of plaintiff on penalty of forfeiture and there are no such requirements on the part of defendant, it was deemed expedient to provide so that plaintiff's rights might not be jeopardized, if a payment became due before defendant was enabled to make a sale—time or punctuality not being made an essence of the covenants to be performed by defendant. The agreement to sell is positive and rests on no condition except that plaintiff shall, by a date certain, give notice of his desire to have the land sold. It is an undertaking to the effect that plaintiff, if he should so conclude, could be rid of the land and have the

money paid thereon and a certain profit returned to him. That seems to us the only sensible construction to give the contract.

Order reversed.