**ABLE FINANCE COMPANY, Appellant,**

v.

**Fred WHITAKER et al., Appellees.**

No. 108.

Court of Civil Appeals of Texas.

Tyler.

Feb. 25, 1965.

Rehearing Denied April 1, 1965.

See also Tex.Civ.App., 360 S.W.2d 892.

Tom Bankhead, Carthage, Henry W. Simon, Simon & Simon, Fort Worth, for appellant.

W. Edward Lee, Carthage, for appellee Fred Whitaker.

Tom B. Ramey, Jr., Ramey, Brelsford, Hull & Flock, Tyler, for appellees David G. Baird and others.

LeRoy LaSalle, Carthage, for appellee Saxon Harris.

SELLERS, Justice.

This is an appeal from a summary judgment entered by the trial court in favor of the defendants and denying the motion of plaintiff for a summary judgment.

The plaintiff, Able Finance Company, brought this suit to recover of Fred Whitaker damages for a breach of Whitaker's contract in the sum of $120,345.20, with interest from May 21, 1962. After a hearing, the court refused Able's motion for summary judgment and entered a take-nothing judgment against Able, and granted Whitaker's motion for summary judgment.

The facts are that Fred Whitaker negotiated with one S. H. Howell to purchase an oil and gas lease on land located in Starr County, known as the Heard Heirs Lease, covering several hundred acres of land. At the time of the negotiations for the lease there was one shut-in gas well on the land but no production therefrom. Fred Whitaker approached Able Finance Company with a view of securing a 100% financing of the deal. The negotiation resulted in S. H. Howell assigning to Fred Whitaker the lease in which Howell reserved and excepted production payment of 54% of ⅞ths of the production until there was received the sum of $127,500.00, plus interest of 6% per annum. On the same date, the plaintiff, Able Finance Company, purchased the production payment from Howell at Whitaker's request. The production payment was to be paid solely from production. Before Able Finance Company would purchase the production payment from Howell, it demanded and Whitaker gave what is known as a take-out letter, which is as follows:

"Reference is here made to that certain assignment of oil and gas lease from S. H. Howell, as Assignor to Fred Whitaker, as Assignee of even date herewith, covering the oil and gas lease dated August 12, 1957, from Mrs.

O. H. Davenport, et al., Lessors, to W. E. Fox, Lessee, recorded in Volume 231, pages 206 to 220 of the Real Estate Records of Starr County, Texas, containing 1654.20 acres in Starr County, Texas.

"In said assignment, S. H. Howell reserved a production payment out of 54% of ⅞ of the production from the lands covered by said lease to pay the sum of $127,500.00, plus an equivalent of interest at 6% per annum on said sum of $127,500.00 remaining from month to month unsatisfied. S. H. Howell has assigned said production payment to Able Finance Company by instrument also of even date herewith.

"This letter is to represent my agreement and obligation to furnish to Able Finance Company, or its successors or assigns, at its request a purchaser who will purchase for cash the unpaid balance due on said production payment, paying therefor the principal amount at that date unsatisfied, if said production payment has not been satisfied in full on or before twenty-four (24) months from and after the date hereof."

The assignment of the lease to Whitaker, the assignment of the production payment to Able Finance Company, and the letter of Whitaker were all drawn by Able Finance Company's attorney and were all dated April 15, 1959. As a result of these instruments, Able Finance Company furnished the money to Fred Whitaker to buy the lease. At the end of the two years set out in the take-out letter, Able Finance Company made demand on Whitaker to comply with his agreement to find a purchaser for the oil payment. This he refused to do.

At the time of the trial the lease was no longer in existence and had been abandoned. There is no dispute that the balance due on the oil payment is the sum of $120,-345.20.

The foregoing facts were evidenced by the pleadings, affidavits, admissions, and depositions on file when the court entered its judgment.

■ At the outset the appellees contend that the appellant is not entitled to have certain of the depositions and admissions on file considered on this appeal for the reason that same were not formally introduced at the hearing on the motions for summary judgment and were not brought up in a statement of facts.

We overrule this contention on the provisions of Section (c) of Rule 166–A, which provides that the court, when convinced that there is no material issue of fact after considering the pleadings, depositions, and admissions on file, together with the affidavits, if any, the motion should be granted as a matter of law.

There cannot be much doubt that the take-out letter executed by Whitaker was the controlling inducement to Able Finance Company to furnish the money for the purchase of the lease, since the lease at the time was not in production and the oil payment was to be paid solely from production. The question then presented to this court is whether this letter, with the other instruments executed at the same time, is valid and creates an enforceable contract between Able and Whitaker, obligating Whitaker to find a purchaser for the oil payment after demand by Able Finance Company.

■ The fact situation apparently has not reached the appellate courts of this state. It is the opinion of this court that the transaction evidenced a valid contract on the part of Whitaker to find a purchaser for the production payment after demand; and upon his failure to so find a purchaser for the same, he breached his contract and is liable to Able Finance Company for the balance due on the production payment of $120,345.20.

■ Whitaker first contends that the contract is void because performance is now impossible. The principle was before the Supreme Court of Minnesota in the case of Hokanson v. Western Empire Land Co., 132 Minn. 74, 155 N.W. 1043, L.R.A. 1917C, 761, and the court held:

"The inducement and part consideration for plaintiff's entering the contract to purchase the land was, no doubt, the undertaking by defendant to resell the same for the price and by the time stated in the letter attached to and made a part of the agreement. The argument is made that, since defendant's ability to sell the land by a certain time and for a specified price depended on the willingness to buy of a third party over whom it had no control, therefore the contract should be held impossible of performance and invalid. We do not think such to be the law. There is nothing in the undertaking inherently impossible. Purchasers are found daily for lands at varying prices. There is nothing so unreasonable either in the price fixed or the limit of time within which to make the sale that performance may be said to have been considered, by the parties, beyond the possibility of attainment, when the contract was made. A contract which appears possible of performance when made does not become invalid or unenforceable because conditions afterwards arise which render performance impossible."

The same principle has been sustained by the Supreme Court of Kansas in the case of Hurless v. Wylie, 91 Kan. 347, 137 P. 981, L.R.A.1915C, 177.

■ The take-out letter complies with the Statute of Frauds because it is in writing and also by a specific reference to the book and page of the record where the lease in question is recorded. Taylor v. Lester, Tex.Civ.App., 12 S.W.2d 1097.

■ We overrule the contention that the contract sued upon is without consideration. It is now settled that every written contract is now deemed to import a consideration for its execution until the contrary is shown. 13 Tex.Jur.2d, § 42, p. 171.

This suit was originally filed in the District Court of Starr County on plaintiff's petition seeking specific performance of the contract with foreclosure of the lien on the land in that county. Pleas to the venue were filed by Whitaker to be sued in Panola County where he resided. The trial court sustained the plea of privilege and ordered the case sent to Panola County. The Finance Company appealed to the Court of Civil Appeals at San Antonio where the judgment of the trial court was affirmed. When the case reached the court in Panola County, the plaintiff amended its pleadings and sought to recover damages only for a breach of contract.

This question was not presented to the San Antonio Court and the venue holding there has no controlling effect on this appeal. 4 Tex.Jur.2d § 1008, p. 698.

■ It is contended that the contract evidenced by the production payment the assignment to the Finance Company and the take-out letter is void as against public policy. This contention is based upon the theory that the transaction stripped of the take-out letter would authorize one method of reporting the party's income taxes, but when the take-out letter is construed as a guarantee of the production payment, an entirely different method of reporting the taxes was applicable. We cannot sustain this contention for the reason that the contract as evidenced by all the instruments does not refer to or require either party to make his income tax report in any particular manner. In order to render the contract void, as violating public policy, the contract would have to contain a stipulation that is prohibited by law. 12 Am.Jur. § 167, p. 662. A contract that could have been performed in a legal manner will not be declared void because it may have been per-

formed in an illegal manner. Lewis v. Davis, 145 Tex. 468, 199 S.W.2d 146.

There are a number of other defendants in this suit who purchased interest in the lease involved in various amounts. One of the defendants is David G. Baird and his purchase agreement is as follows:

"This will confirm our verbal agreement wherein we have offered you and you have agreed to accept an undivided %₃₂nds of the working interest in and to that certain oil, gas and mineral lease dated August 12, 1957, executed by Mrs. O. H. Davenport, et al, as Lessors, to W. E. Fox, as Lessee, covering 1654.2 acres of land out of the G. O. Newman Sub-division of the El Bandito Grant, Abstract No. 38, in Starr County, Texas, which lease appears of record in Volume 231 at Page 206 of the Deed Records of Starr County, Texas, to which reference is here made for descriptive purposes, subject to the exceptions and reservations hereinafter set out.

"We have purchased from S. H. Howell of Alice, Texas the above described oil, gas and mineral lease wherein other parties have retained royalties and over-riding royalties totaling 32.5 percent resulting in our operating interest totaling a 67.5 percent working interest. The interest you acquire is subject to such royalties and overriding royalties retained by other parties, so that you actually purchase a %₃₂nds working interest out of such 67.5 percent leasehold interest.

"This property has been purchased by me by first paying the sum of $10,000.00 evidenced by a note and mortgage executed by me in favor of Fort Worth Pipe & Supply Company, a Corporation of Fort Worth, Texas, bearing interest from date at the rate of 6 percent per annum and payable 120 days from April 15, 1959. The said sum of $10,000.00 represents the value I have paid for the equipment on this lease.

"In addition thereto, S. H. Howell, from whom we have purchased the oil, gas and mineral lease, reserved a production payment out of 54 percent of %ths of the production from the lands covered by said lease to pay the sum of an additional $127,500.00 plus an equivalent of interest at 6 percent per annum on said sum of $127,500.00 remaining from month to month unsatisfied. S. H. Howell has assigned said production payment to Able Finance Company by instrument dated April 15, 1959 for which reference is made for all purposes.

"By letter dated April 15, 1959, I further agreed and became obligated to furnish to Able Finance Company or its successors or assigns at its request, a purchaser who will purchase for cash the unpaid balance due on said production payment, paying therefor the principal amount at that date unsatisfied, if said production payment has not been satisfied in full on or before 24 months from and after said date.

"As a part of the consideration of your purchasing such %₃₂nds working interest, you become obligated and you agree to assume and pay a %₃₂nds part of my obligation to and with both Fort Worth Pipe & Supply Company and Able Finance Company as above stated. In other words, you take this interest subject to all the terms and conditions as outlined above and in addition thereto, you assume and agree to pay your proportionate part of the obligation imposed on me in this purchase agreement and the assumption on your part and your agreement to pay your proportionate part of the obligation imposed on me is not only done by you as trustee but such agreement and obligation is a personal and individual obligation on your part.

"It is contemplated between the parties to this letter agreement that Well No. 5 will be drilled to a depth of ap-

proximately 5500 feet within 60 days from the date hereof, and as a further part of the consideration, you have agreed and you are obligated to pay to the casing setting point the sum of $12,000.00 but in this connection, you will have no further obligation unless and until we attempt completion, and only in that event will you pay your proportionate part of the cost of completing the said Well No. 5.

"On all subsequent drilling and operations, you will pay only your proportionate part of the actual costs of further developments, all of which will be subject to an Operating Agreement signed or to be signed between Fred Whitaker as Operator and Maurice H. Koodish, Non-Operator, the terms of which are the usual and customary terms of operating agreements used in the vicinity of Starr County, Texas and you will further be deemed and considered a non-operator under said Operating Agreement and subject to same.

"If this is your understanding of our trade, please execute the original and one copy of this agreement and retain one copy for your files."

The other defendants purchased their interest with like contracts but for the amount of interest purchased. The assumption contained in the foregoing instrument is clear and unambiguous; but to further emphasize the assumption, the instrument contains this language:

"In other words, you take this interest subject to all the terms and conditions as outlined above and in addition thereto, you assume and agree to pay your proportionate part of the obligation imposed on me in this purchase agreement."

■ As we view this instrument, it is nothing more than an agreement by Whitaker to sell an interest in real estate with an outstanding obligation against the same, in which purchaser assumes his proportionate part of the obligation. In this state we regard the law as settled that the party assuming the obligation is liable. Calhoun v. Taylor, Tex.Civ.App., 241 S.W. 579:

"If, as alleged, and concluded by the trial judge, Calhoun assumed the debt to Taylor, he is liable for it, and the judgment is correct. We strip the case of all complications and unnecessary side issues about the conversion of the property, about which large portions of briefs of both parties seem to be concerned, and hold Calhoun liable on his assumption of the debt."

■ The non-resident defendants make the contention that, although they were cited in this case to appear and answer under the provisions of Article 2031b, Vernon's Ann. Revised Civil Statutes of Texas, the trial court erred in overruling their plea to the jurisdiction of the court over said defendants for the reason that Article 2031b is violative of the due process provision of the United States Constitution insofar as it subjects him to the personam jurisdiction of the Texas court.

We deem it unnecessary to enter into a lengthy discussion of this question, but we adopt the reasoning of Judge Noel in the case of Hearne v. Dow-Badische Chemical Company, et al., D.C.Texas, 224 F.Supp. 90, discussing this statute at length and holds the same does not violate the due process clause of the Fourteenth Amendment.

There are other assignments which we have considered and are believed to be without merit and are overruled.

The judgment of the trial court is reversed and judgment here rendered sustaining the motion of appellant for summary judgment. Judgment is here rendered for Able Finance Company against Fred Whitaker for the sum of $120,345.20, with interest from May 21, 1962, at the rate of 6% per annum. The appellant will also have judgment against appellee David G.

Baird, jointly with Whitaker and severally for $22,567.74, together with interest as above set out, same being the amount assumed by Appellee Baird of the Able Finance Company obligation; and appellant will have a like judgment against each of the following appellees for the following amounts:

| | |
|---|---|
| F. Donald Hart | $ 3,760.79 |
| Philip E. Hoffman | 3,760.79 |
| Margery L. Miller and Helen L. Katenbacher, executors of the estate of Ray Miller | 5,641.18 |
| Frederick Rauh and Harriet F. Rauh | 1,880.39 |
| E. Trimble Smith | 7,521.58 |
| Maurice L. Koodish | 45,129.48 |
| Frederick W. Ziv | 30,086.32 |
| Saxon Harris | 1,880.39 |