## ALICE FLYNN ET AL. V. BANK OF MINERAL WELLS.

### Decided January 30, 1909.

**1.—Contract—Public Works—Attorney's Fee—Public Policy.**

A contract to pay an attorney at law a certain sum of money as compensation for his services as an attorney in assisting a contractor to obtain a contract from a Commissioners' Court to build a public bridge, considered in connection with evidence as to the services rendered by the attorney, and held void as against public policy, and this though the contract required the attorney only to use his best efforts by all rightful and legal means to assist the contractor in obtaining the contract.

#### ON REHEARING.

**2.—Partnership—Notice to Partner.**

E. was president of a bank at W. and a partner in a bank at M. As president of the bank at W. he was served with notice not to pay a certain draft drawn on that bank. The draft was thereafter sold by the drawee to the bank at M. for a valuable consideration. E. had nothing to do with the management of the bank at M. Held, that notice to E. of the countermand of the draft was not notice to his partnership bank at M.

Appeal from the District Court of Palo Pinto County. Tried below before Hon. W. J. Oxford.

*McCall & McCall* and *J. T. Daniel,* for appellants.—All agreements attempting to control, for a consideration, the business of the government are void. Tool Co. v. Norris, 17 U. S., 868; Parsons v. Trask, 66 Am. Dec., notes 507-8; Houlton v. Dunn, 51 Am. St. Rep., 493; Richardson v. Scott Bluff Co., 80 Am. St. Rep., 682; Mills v. Mills, 100 Am. Dec., 535; Spaulding v. Ewing, 34 Am. St. Rep., 608; Clippenger v. Hepbaugh, 40 Am. Dec., 519; 9 Cyc., page 485 et seq.; Specht v. Collins, 81 Texas, 213; Houlton v. Nichol, 33 L. R. A., 167; Burk v. Child, 88 U. S., 21 Wal. 441, 22 Law Ed., 623; Houlton v. Dunn, 30 L. R. A., 737 and note.

The contract between Newbrough and Flynn being contrary to public policy and void, and defendant having introduced evidence showing that one of the plaintiffs had notice of the dishonor of the draft prior to the transfer of same by Newbrough to plaintiff, the charge should have been given to the jury. Hays v. Citizens Savings Bank, 40 S. W., 573; Parsons on Partnership, side page 196 and 214 and note; 7 Cyc., page 659 and note.

*A. S. Stevenson* and *Penix & Ranspot,* for appellees.—The contract between Wm. Flynn and W. E. Newbrough was for professional services as same shows upon its face, and an agreement expressed or implied for purely professional services is valid, even though such services are to represent a party before a Commissioners' Court or Legislative Committee, and the court did not err in giving peremptory instruction to find for the plaintiff, appellee in this case. Burk v. Childs, 88 U. S., 22 Law Edition, 623; Kottwitz v. Alexander, Exr.,

34 Texas, 708 and 709; Lewis v. Alexander, 51 Texas, 591; Cundiff v. Campbell, 40 Texas, 147; Beham v. Ghio, 75 Texas, 87.

If the contract between Newbrough and Flynn is void, then it is necessary to show notice upon the part of appellee at the time of the purchase of the check in question; and notice to W. H. Eddleman, he having no active management of the bank, was not notice to the bank. Lindley on Partnership, p. 142.

DUNKLIN, ASSOCIATE JUSTICE.—This is an appeal from a judgment rendered by the District Court of Palo Pinto County in favor of the Bank of Mineral Wells against Alice Wohleb (*nee* Alice Flynn) for seven hundred dollars on a check in that sum dated December 20, 1904, drawn by Alice Flynn, then widow of William Flynn, on the Merchants & Farmers National Bank of Weatherford, Texas. The check was drawn in favor of W. E. Newbrough, who indorsed and delivered the same to appellee January 3, 1905, for a valuable consideration paid by appellee. Newbrough was a practicing attorney at law and received the check in part payment for services rendered by him to William Flynn in procuring a contract to build two bridges in Palo Pinto County, which was awarded Flynn by the Commissioners' Court of that county. The two bridges were constructed under and by virtue of the contract, a portion of the work being done after Flynn's death. Mrs. Flynn duly qualified as administratrix of the community estate of herself and husband, William Flynn, and the suit was against her as such and also against her in her individual capacity. Paul W. Flynn, Nellie Flynn, Fred Flynn, Van Flynn and Enid Flynn, children of William and Alice Flynn, were also made parties defendant in the suit, but the judgment of the court was in their favor. After the institution of the suit Alice Flynn married Henry Wohleb and judgment was against her in the name of Alice Wohleb.

In her answer to plaintiff's petition she pleaded to the jurisdiction of the court, alleging that at the time the suit was instituted she and her codefendants were residents of Parker County, and by exception challenged the sufficiency of the petition because it failed to show that suit was instituted at the first term of court which convened after the draft was dishonored. Controverting the merits of the petition, she alleged that the draft upon which the suit was based was given by her to cover a balance which at the time it was given she supposed to be due Newbrough for services rendered William Flynn under a written contract of employment, and which contract Newbrough and his agents induced her to believe was valid and binding. She further alleged that by said contract of employment Newbrough engaged to procure votes for a bond issue to build the bridges, to bribe influential citizens to advise and favor the project, and to assist Flynn in procuring the contract for the work, and that the contract was therefore contrary to public policy and void.

Following is the written contract of employment executed by William Flynn and W. E. Newbrough and introduced in evidence by defendant Alice Wohleb:

"The State of Texas,

"County of Palo Pinto. . . . This writing and agreement made and entered into on this the 27th day of February, 1904, by and between William Flynn and W. E. Newbrough, witnesseth:

"That said Flynn hereby agrees to pay said Newbrough the sum of $750 each for each (bridge) across the Brazos River that may be awarded to said Flynn by the Commissioners' Court of Palo Pinto County during the year 1904, as compensation for his services as an attorney already performed and to be performed in assisting said Flynn in obtaining said contracts, said compensation to become due and payable as follows: $750 of said amount upon the award of the contract or contracts and the approval of the county bonds issued to pay for said bridge or bridges, and in the event of two bridges being awarded to said Flynn then the remaining $750 to be paid to said Newbrough on the date of the acceptance of the first of said bridges by said court and payment therefor. Said Newbrough hereby agrees to accept said above named compensation as therein stated and to use his best efforts by all rightful and legal means to assist said Flynn in obtaining said contracts. It is hereby agreed and understood that this agreement is made and accepted in lieu of any and all other agreements heretofore made by the parties hereto and said former agreements are to be null and void. Signed in duplicate on the day and date first above written.

"Wm. Flynn.
"W. E. Newbrough."

Mrs. Wohleb testified upon the trial without contradiction that when Newbrough first presented his claim for the seven hundred dollars he explained to her "that it was for his services to Mr. Flynn in using his (Newbrough's) influence to secure from the Commissioners' Court of Palo Pinto County certain contracts for the erection of bridges in that county." She did not at that time give Newbrough the draft sued on, but testified that a few months later Newbrough's attorney came to collect the claim, and relying upon his assurance of the validity of the claim she gave him the draft in controversy, but afterwards countermanded its payment upon advice of her attorney that the claim was void.

J. L. Cunningham was introduced by defendant as a witness and testified that he was a member of the firm of the Bank of Mineral Wells; that Newbrough solicited him to assist Flynn in securing from the Commissioners' Court contracts to build the bridges, representing that Flynn had authorized him to offer Cunningham two hundred dollars for such assistance. This witness further testified that petitions requesting the Commissioners' Court to submit to a vote of the county the question of building the bridges were circulated by Newbrough in different portions of the county. It was proven by uncontroverted testimony that Newbrough appeared before the Commissioners' Court on several occasions, assisting in estimating the cost of the bridges, the resources of the county available for purposes of building the same, and later urging the acceptance of Flynn's bid for the work. It was further shown that Newbrough, as attorney for Flynn, appeared be-

fore the Attorney-General in Austin, and by argument, and upon additional evidence procured by him, secured that officer's approval of the bonds issued for the building of the bridges in question. The testimony of this witness was not controverted.

The court instructed the jury peremptorily to return a verdict in favor of plaintiff against defendant Alice Wohleb for the amount of the draft, and in this we think there was error. We are of opinion that the contract above referred to is contrary to public policy and void. The case of Providence Tool Co. v. Norris by the United States Supreme Court, 2 Wall., 45, L. C. P. Co., vol. 17, 868, is strongly in point. That was a suit on a contract by the terms of which the defendant had agreed to pay plaintiff a consideration for his services in case plaintiff would obtain for defendant a contract from the Secretary of War to furnish muskets to the United States government, and Justice Field, rendering the opinion of the court, said: "The question then is this: Can an agreement for compensation to procure a contract from the government to furnish supplies be enforced by the courts? We have no hesitation in answering the question in the negative. All contracts for supplies should be made with those and with those only who will execute them most faithfully and at the least expense to the government. Considerations as to the most efficient and economical mode of meeting the public wants should alone control, in this respect, the action of every department of the government. No other consideration can lawfully enter into the transaction so far as the government is concerned. Such is the rule of public policy, and whatever tends to introduce any other elements into the transaction is against public policy. That agreements like the one under consideration have this tendency is manifest. They tend to introduce personal solicitation and personal influence as elements in the procurement of contracts, and thus directly lead to inefficiency in the public service and to unnecessary expenditures of the public funds." See also Richardson v. Scotts Bluff Co., 80 Am. St. Rep., 682; Mills v. Mills, 40 N. Y., 543, 80 Am. Dec., 535; Trist v. Child, 21 Wall., 441, 22 L. C. P., 623.

In the case of Mills v. Mills, *supra,* the court says: "It is not necessary to adjudge that the parties stipulated for corrupt action, or that they intended that secret and improper resorts should be had. It is enough that the contract tends directly to those results." In the case of Burk v. Child, *supra,* the following language is used in the opinion of the court: "We have said that for professional services in this connection a just compensation may be recovered. But where they are blended and confused with those which are forbidden, the whole is a unit and indivisible. That which is bad destroys that which is good and they perish together."

Appellee contends that it was an innocent purchaser of the draft for a valuable consideration, without notice of any defense against the payment thereof. The evidence showed that the check was drawn December 20, 1904; that a short time thereafter Mrs. Wohleb notified the Merchants' & Farmers' Bank of Weatherford to refuse payment of it, that its payment was accordingly refused by that bank, and that W. H. Eddleman, president of the latter bank, and also one of the

partners of appellee, the Bank of Mineral Wells, was notified of Mrs. Wohleb's refusal to pay the draft before it was acquired by appellee on January 3, 1905. We are of the opinion that notice to W. H. Eddleman was notice to appellee, even though the evidence further showed that D. M. Howard, the president, and I. N. Wynn, cashier of appellee bank, had the sole management and control of its business. 30 Cyc., 530, and cases there cited; 1 Lindley on Partnerships, bottom page 352.

The trial court should have instructed a verdict in favor of appellant Mrs. Alice Wohleb as well as in favor of the other defendants, and as it is the duty of this court to render such judgment as should have been there rendered, the judgment of the trial court is reversed and here rendered in favor of appellants.

### ON MOTION FOR REHEARING.

On original hearing we held that notice to W. H. Eddleman, one of the members of the partnership firm of the Bank of Mineral Wells, of Mrs. Alice Wohleb's countermand of the draft which was sued on, was notice to and binding upon the firm, and that the firm could not be heard on its plea of innocent purchaser of the draft, and in support of which plea evidence was introduced upon the trial. We were constrained to reach this conclusion by reason of the general rule announced without exception in all the decisions which we could then find, that notice to a member of a partnership firm of any fact pertaining to the business of the firm was binding upon the firm. Since rendering that opinion we are convinced that in that holding we were in error. In 30 Cyc., page 530, after announcing the general rule above stated, the following language is used: "If the notice relates to an individual transaction of the notified partner, or to one outside the scope of the firm business, it ought not to be imputed to his copartners." In the case of Baldwin v. Leonard, by the Supreme Court of Vermont, 98 Am. Dec., 324, one Leonard was sued for the price of goods purchased from the firm. His defense was that he purchased same as agent of another, and should not be held liable personally therefor. The proof showed that the member of the firm who made the sale knew nothing of the agency of Leonard; although another member of the firm, who took no part in the sale and did not know of it until after its consummation, had been told previously by Leonard that he expected to call at some future time and purchase the goods, and that the same would be purchased by him as agent for another. The court held that this knowledge of the latter member of the firm was not binding upon the firm and that Leonard was liable personally for the value of the goods purchased by him. In Beinenstock v. Ammidown, 153 N. Y., 47, 49 N. S., 321, it is said: "The rule of law which attaches a responsibility to the status of a partnership relation for the acts of a copartner within the scope of business transactions, is founded upon a just view of the requirements of public commercial interests. To extend its operation to the extent of imputing the notice or knowledge of a copartner acquired in transactions outside of the partnership business, and which were had for his individual bene-

fit, to the other, would be to convert the rule into an instrumentality of injustice."

We think the quotation last made applies with force to the case at bar. As found in our original opinion, the check which was purchased by appellee was drawn by Mrs. Wohleb on a bank in Weatherford, and the latter bank, through Eddleman as its president, was notified by the drawer to refuse payment. In this manner Eddleman received notice of the dishonor of the draft, but he had no notice that it would be sold to the Mineral Wells Bank, and the managers of the latter bank had no notice that Eddleman had been informed of the dishonor of the draft. We therefore believe that this transaction should constitute an exception to the general rule originally announced, and that notice to Eddleman that the draft had been countermanded was not notice to appellee.

We still adhere to our former ruling that the contract between Newbrough and Flynn was contrary to public policy and void, but the fact that a balance supposed to be due on that contract was the consideration for the draft sued on, would be no defense to its payment in the hands of an innocent purchaser for a valuable consideration without notice that the draft was founded upon an illegal consideration. Campbell v. Jones, 2 Texas Civ. App., 265.

Appellee's motion for rehearing is therefore granted and the cause remanded for another trial.

*Reversed and remanded.*