## LEONARD et al. v. CLEBURNE ROLLER MILLS CO. (No. 9228.)

(Court of Civil Appeals of Texas. Fort Worth. Dec. 24, 1920. Rehearing Denied Jan. 22, 1921.)

1. **Frauds, statute of** ⬯129(9)—**Parol sale or gift of land must be followed by delivery and improvements.**

A parol contract for the sale or gift of land is not enforceable unless followed by delivery of possession and the making by the vendee or donee of valuable and permanent improvements which materially enhance the value of the property.

2. **Gifts** ⬯49(4)—**Donee of land held not to show making of permanent improvements.**

In action to recover title to and possession of land claimed by defendants under a parol gift, defendants *held* to have wholly failed to discharge the burden of showing that they made valuable improvements on the property of a character that materially enhanced its value, as contemplated by the rule that a parol contract for sale or gift of land is not enforceable unless followed by delivery of possession and making the valuable and permanent improvements which materially enhance the value of the property.

3. **Partnership** ⬯138—**Gift of land of firm by one partner not binding on others.**

A gift of a house and lot to an employee by one partner was not binding on the others where they had no knowledge thereof.

4. **Partnership** ⬯159—**Notice to one partner held not notice to others of adverse claim.**

Where notice to one partner of an adverse claim of title and possession to a house and lot by an employee of the partnership was based on alleged gift of such house and lot by such partner, there was no notice to the partnership of adverse claim and possession; other partners not knowing of or consenting to the gift.

5. **Adverse possession** ⬯60(4), 64—**Employee living in house belonging to partnership estopped to claim title adversely without repudiation of license.**

An employee of a partnership living in a house of the partnership on the property was estopped to claim title adversely to the partnership under the statute of limitation or otherwise without a clear repudiation of his holding as a licensee and notice of such repudiation brought home to the partnership through some member or members of the firm under such circumstances as to be legally binding upon the firm and the members thereof individually, although one of the partners without authority made a parol gift of the house and lot to the employee without knowledge or consent of the other partners, employee not making permanent improvements which would enhance the value of the lot; but employee could set up the statute of limitations as to the undivided interest of the partner making the gift of the house and lot.

Appeal from District Court, Johnson County; O. L. Lockett, Judge.

Action by the Cleburne Roller Mills Company against Arthur Leonard and another. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

J. M. Moore, of Cleburne, for appellants.

J. L. Lockett, Jr., of Fort Worth, and H. P. Brown, of Cleburne, for appellee.

DUNKLIN, J. Arthur Leonard and wife, Mrs. Mary Leonard, have appealed from a judgment in favor of the Cleburne Roller Mills Company for title and possession to a house and lot situated in the town of Cleburne.

The plaintiff claimed title under a regular chain of conveyances from George Anderson, John Anderson, and J. A. Anderson, composing the partnership firm of Anderson Bros., who were engaged in running a flour mill in the town of Cleburne, under the firm name of Anderson Bros. Roller Mills Company, for a long period of time, beginning in the year 1885 and extending up to May 25, 1917, and who acquired the property, together with the remainder of the block on which the mill was erected, September 1, 1886.

On May 21, 1902, in a suit in the district court of Johnson county, in which J. A. Anderson and the heirs of George Anderson and John Anderson, deceased, were parties, block No. 4 in the town of Cleburne was decreed to be vested in J. A. Anderson, George Robert Anderson, and Mrs. Elizabeth Anderson, who, later by deed dated June 17, 1912, conveyed all of said property to the Anderson Bros. Roller Mills Company, a private corporation. By deed, dated May 25, 1917, that corporation conveyed the same property to Pool, Gresham, and Nail, who, on June 12, 1917, conveyed it to the Cleburne Roller Mills Company, plaintiff in this case, all of which deeds were duly acknowledged and filed for record in the deed records of Johnson county. The property covered by the conveyances mentioned above included the flour mill and a block of ground upon which the same had been built in the town of Cleburne. The property in controversy in this suit consisted of a lot 80x117½ feet out of the southeast corner of the block upon which the mill was erected. Upon this lot there was built a small residence for the accommodation of the engineer and fireman employed in the mill.

In the year 1888, Arthur Leonard and his wife, Mary, were living in Canada. Mary Leonard was the sister of John and George Anderson, of the firm of Anderson Bros., and J. A. Anderson, the other member of that firm, was the nephew of Mrs. Leonard. Arthur Leonard went from his home in Canada to Cleburne and was there employed for a short time as fireman and engineer in the mill. He then returned to Canada, and after he had returned, his wife received a letter

from her brother John Anderson, proposing to give her a home in Cleburne if she and her husband would move to Cleburne and if her husband would work in the capacity of engineer and fireman at the mill. The Leonards decided to accept that proposition, and accordingly moved to Cleburne, where they were installed in the house and lot belonging to the firm and situated in one corner of the mill block, as stated above. Arthur Leonard immediately went to work as engineer and fireman at a salary of $40 per month and held that position until the firm sold out in the year 1917.

Upon the trial of the suit, the claim was made by the defendants that Mrs. Leonard had acquired title to the property in controversy by gift from her brother John Anderson. No contention was made that John Anderson or any one else ever executed any written conveyance of the property, but the claim was made that it was a parol gift from John Anderson, and that acting upon that gift the defendants had made valuable and permanent improvements upon the property.

The defendants also claimed title under the statute of limitation of ten years; the defendants alleging that they had been in peaceable and adverse possession of the property, cultivating, using, and enjoying the same, for more than 25 years next preceding the filing of the suit.

Upon the conclusion of the evidence introduced upon the trial of the suit, the court peremptorily instructed a verdict in favor of the plaintiff, and complaint of that instruction is made by different assignments of error.

It is contended that the evidence introduced by the defendants was sufficient, prima facie, to establish a parol gift by John Anderson, representing his firm, and that pursuant to that gift he placed the defendants in possession of the property, and that thereafter defendants made valuable and permanent improvements thereon. Mrs. Leonard and her husband both testified that they gave up their home in Canada and moved to Cleburne at the special instance and request of John Anderson, who promised that if they would do so and Arthur Leonard would work at the mill as fireman and engineer, as he had theretofore worked, he would give them a home; that upon their arrival in Cleburne John Anderson placed them in possession of the property in controversy, telling Mrs. Leonard at the time that that was her home; that they went into possession of the property and held the same up to the time of the institution of this suit in August, 1917, a period of about 30 years; that during said possession they made improvements on the property the nature of which will be hereinafter noted in quotations from their testimony given on the witness stand. Two other witnesses were introduced who testified to statements of John Anderson to the effect

that he had given the property to Mrs. Leonard for her home. Mrs. Leonard further testified that during the time they lived in the home her brother John Anderson made improvements upon the property by adding two rooms to the house and also painted the house once, and for several years lived in the house with the defendants and paid them board at the rate of $12 per month. Prior to the addition of these two rooms, the house consisted of only three rooms. She testified that when John Anderson placed them in possession of the house he said to her, "Well, here is your home, Mary." She further testified as follows:

"After we moved into this house and on this property, we made some little improvements on it. There was a cow shed built and some fencing built around the lot, and some papering and painting and things like that. I think Uncle John Anderson painted the outside of the house one time. The other repairs were kept up by my husband, such repairs as were kept up. Mr. John Anderson came and lived down there with us about the time he had his divorce suit, and I think he lived there with us about seven years before he died. He came to live with me before the divorce suit was tried but after it was brought, and remained there after that until his death. I think he died about 1909, or 1910. He died there in my home. I looked after him during his sickness. He was about 77 years old when he died. John Anderson always referred to the house as mine and called it my home. * * * Outside of the two rooms testified about, of course, there was some painting and papering done at times and some repairs made that the house needed occasionally. We put these repairs there. My brother John did buy the paint. Then there was some improvement in the way of the building of a cow shed. We paid for that. There were other repairs like fixing window lights and flues and things like that that we did. There was a cow shed built there right away after we came there. This shed was just a little shed built of lumber. There may be some of that shed there yet. I expect it is. My husband built that shed and paid for it. We made what improvements there were with reference to the shed. * * * We did a lot of little repairs on the house from time to time. Flues would burn out—these metal flues—and we would have to replace them. * * * I could not state to the court and jury the value of the improvements we put on that place during the 35 years that we lived there. These little things that we did counts up; I suppose during that time we paid out about $200."

Arthur Leonard testified as follows with reference to the improvements which he claimed to have made:

"Since we have been in possession of this place or lived on it, I have kept the place fixed up as it gave way. I have built a couple of cow sheds since I have been on the place and painted the house outside and did some papering and patching up the porches and fixing of flues, window lights, steps, fences, and things like that. * * * As stated, I did only such repairs as were needed on the house as

we went along; I did not keep track of every little item. We spent a couple of hundred dollars or more, I should judge, while we lived there in the way of repairs, etc. * * * The improvements I made there were the little cow shed and fixing flues and putting in panes of glass and little repairs like that, just fixing up what was needed to keep the place in repair, and I did not keep track of it, but presume we spent as much as $200 in that way during the time we lived there."

The defendants both testified further that they had never paid any taxes on the property during the entire time they lived upon it. Neither had they paid any water rents for water that was furnished for household purposes from the mill. Relative to the payments of taxes, Arthur Leonard testified as follows:

"We paid no taxes on the property during the time we lived in it for the reason that John Anderson paid them. When he said the place belonged to my wife, I told him I had better give it in for taxes, and he said no, he would give it in with the rest of the stuff. He said he was better able to pay it than I was and that he would just pay the taxes. I was getting $40 per month working there at the mill. I was running the engine and firing. That was small wages for that work. * * * Yes, it was true that Mr. Claud While, Mr. Noel Wells, and Mr. Bob Nall have asked me for a rendition of property for taxes during the time they were working in the assessor's office. I told them that the house and lot was rendered by John Anderson, that he always gave the place in; I did not need to give the property in as mine or my wife's because John Anderson would give it in. After John Anderson died, these people did not come to me for a rendition of this property, and I never paid the taxes on it. I just supposed that John Anderson left plenty to pay it."

According to the testimony of Mrs. Leonard, the property was worth $1,000 at the time the suit was instituted, and its rental value then was $12 to $13 per month. John Nanie, who lived a neighbor to defendants for 25 to 30 years, was introduced as a witness for defendants, and testified that at the time the suit was instituted the property was worth $800 or $900 and was worth $500 or $600 "25 or 30 years ago." He fixed its rental value at $8 to $9 per month. The testimony of those two witnesses was the only testimony offered on the question of values.

While Mrs. Leonard testified that she and her husband built a cow shed immediately after moving into the house, yet neither she nor her husband attempted to give the cost or value of the shed, whether it was permanent in character, nor even its dimensions, to serve as a possible basis for estimating its value and the consequent enhancement of the value of the premises by reason of it. The rest of the improvements made upon the house, as shown by their own testimony, were nothing more than ordinary repairs, of a trivial nature, which, presumably, were made necessary by their own long use of the house, and were such as might reasonably be expected of a tenant occupying a house without any charge against him for rent. Furthermore, defendants were unable to give the dates of such repairs, nor the separate cost of each, nor the value of all of them taken together and considered separately from the cost of the cow shed, although it does appear from the testimony of both defendants that those repairs extended over a number of years.

[1] It is well settled in this state that a parol contract for the sale or gift of land is not enforceable unless followed by delivery of possession and the making by the vendee or donee of valuable and permanent improvements which materially enhance the value of the property. Ann Berta Lodge v. Leverton, 42 Tex. 25; Altgelt v. Escalero, 51 Tex. Civ. App. 108, 110 S. W. 989; Martin v. Martin, 207 S. W. 188; Atchley v. Perry, 55 Tex. Civ. App. 538, 120 S. W. 1105; Lechenger v. Bank, 96 S. W. 638.

In the case of Bradley v. Owsley, 74 Tex. 69, 11 S. W. 1052, the following was said:

"Such possession, with payment of the purchase money and improvements of a permanent character enhancing the value of the premises, or such possession without improvements, connected with other circumstances making the transaction a fraud upon the purchaser if the agreement is not enforced, will take the case out of the statute of frauds."

But in the same case the court cited with approval Garner v. Stubblefield, 5 Tex. 560, and Wood v. Jones, 35 Tex. 66, holding that even the payment of the purchase money without possession would not authorize specific enforcement of the contract of sale. If the acceptance of the purchase money would not make the transaction such a fraud upon the purchaser as to estop the vendor from setting up the statute of frauds as a defense to a suit for specific enforcement, then perhaps it is not clear how a contrary conclusion would follow by virtue of the act of John Anderson in inducing defendants to leave their home in Canada to come to Cleburne and accept service in their mill as a fireman and engineer. And we think it should be noted further in this connection that no attempt was made to show that defendants sold their home in Canada at a sacrifice price, or that their financial condition would have been better if they had remained there, nor that they were without remedy by suit for damages for breach of contract.

[2] We are of opinion that defendants wholly failed to discharge the burden of showing that they made valuable and permanent improvements upon the property of a character that materially enhanced its value, as contemplated by the rule of decisions noted above, and therefore failed to sustain their

claim of title by parol gift to any interest whatsoever in the property.

[3, 4] George Anderson also died long before the suit was instituted, and no proof was introduced tending to show that either he or J. A. Anderson, Jr., the other member of the firm, was informed that John Anderson, Sr., had told Mrs. Leonard that he gave her the property for her home, and no proof was introduced aside from the proof of possession of the property by the Leonards, which in any manner tended to put George Anderson and J. A. Anderson on notice that they were claiming title to the property adversely to the firm of Anderson Bros. In fact, according to the testimony of J. A. Anderson which was uncontroverted, he acted upon the belief all the while that the contract of employment of Arthur Leonard was the payment of $40 per month and the furnishing of the house as a place to live in; in other words, that the furnishing of the house free of rents was in part payment of Arthur Leonard's salary as engineer and fireman. While there was evidence tending to show notice to John Anderson of an adverse claim of title and possession by the Leonards, yet it further appears that such notice was based altogether upon the alleged gift made by John Anderson, which was beyond the scope of his authority to make for the firm, and was therefore not binding upon the partnership or the other members; there being no proof that either of the other partners knew of or consented to the gift.

"Notice to one partner in reference to any matter relating to a transaction within the ordinary scope of the firm's business is notice to all the partners. If the notice relates to an individual transaction of the notified partner, or to one outside the scope of the firm business, it ought not to be imputed to his copartners. And notice acquired by a partner where a fraud is being perpetrated upon his copartners by or with his consent will not be imputed to them." 30 Cyc. p. 530, par. 19.

In Bienenstok v. Ammidown, 155 N. Y. 47, 49 N. E. 321, a judgment against one of the members of a partnership firm, which was predicated upon notice of certain transactions brought home to the other member of the firm, was reversed by reason of the fact that the notice to the other member was in connection with a transaction on his part which was in fraud of his copartner, and therefore beyond the scope of his authority to bind his copartner. In the opinion rendered in that case the following was quoted with approval from Lindley on Partnership:

"Where one member is acting beyond his power, or is conducting a fraud on his partners, or is the person whose duty it is to give his firm notice of what he himself has done, in all such cases notice on his part is not equivalent to notice by them."

And after quoting from that authority, the court said further:

"The rule of law which attaches a responsibility to the status of a partnership relation for the acts of a copartner within the scope of business transactions is founded upon a just view of the requirements of public commercial interests. To extend its operation to the extent of imputing the notice or knowledge of one copartner, acquired in transactions outside of the partnership business, and which were had for his individual benefit, to the other, would be to convert the rule into an instrumentality of injustice. The result would be as illogical, in my opinion, as it would be indefensible upon legal grounds."

The alleged gift by John Anderson being beyond the scope of his authority to bind his copartners, if effective at all, could not in any event have conveyed more than his undivided interest in the property. In Liddell, Johnson & Garmany v. Crain, 53 Tex. 549, it was held, quoting from the syllabus of the case, that—

"Each member of a firm is chargeable with notice of the transactions of the others within the scope of the partnership business, but not of the sale by a partner of his individual interest in partnership property, or of his representations in making the sale."

See, also, Flynn v. Bank of Mineral Wells, 53 Tex. Civ. App. 481, 118 S. W. 848; Baldwin v. Leonard, 39 Vt. 260, 94 Am. Dec. 324; Hawkins v. Western Nat'l Bank, 146 S. W. 1191.

The partnership of Anderson Bros. was not a trading concern in the purchase and sale of real estate. The property in controversy was acquired and used solely for the purpose of transacting its milling business and was so used throughout the duration of that business, covering a period of many years.

[5] In the absence of proof of substantial, valuable, and permanent improvements, enhancing the value of the lot, defendants were in possession as mere licensees, at best, of the partnership and of the two members, George Anderson and J. A. Anderson, individually, and they were estopped to claim title adversely to the partnership or to those two members, under the statute of limitation, or otherwise, without a clear repudiation of their holding as such licensees and notice of such repudiation brought home to the partnership through some member or members of the firm under such circumstances as to be legally binding upon the firm, and George and J. A. Anderson, individually. Cobb v. Robertson, 99 Tex. 138, 86 S. W. 746, 87 S. W. 1148, 122 Am. St. Rep. 609; 16 R. C. L. p. 662.

The record as noted above shows a conveyance of the property by J. A. Anderson and other heirs of George Anderson and John Anderson, deceased, to the Anderson Bros. Roller Mill Company, a corporation, and a

deed from that company to the plaintiff; and since that is the source of plaintiff's claim of title, it is unnecessary for us to decide whether or not, in the absence of notice to the partnership of any adverse possession of the Leonards, they failed to establish title by limitation as to any interest in the property, against partnership creditors, in the event of insolvency of the firm. However, in the absence of notice to J. A. Anderson and George Anderson of such adverse claim of title, the Leonards' plea of limitation would not avail against the undivided interests of those two partners which passed to plaintiff through the deeds of conveyance mentioned, even though it should be held valid against the undivided interest vested in John Anderson by the deed to his firm.

In view of the evidence pointed out, tending to support the plea of limitation as against that undivided interest of John Anderson, the court erred in his peremptory instruction to return a verdict for plaintiff, and for this error the judgment of the trial court is reversed and the cause remanded; and this opinion is filed as a substitute for our former opinion, filed June 26, 1920, which is accordingly withdrawn, and appellee's motion for rehearing is overruled.