### Tom Daily v. G. J. Hollis.

Decided December 21, 1901.

**Contract—Public Policy—Stifling Competition.**

An agreement between two competing contractors as to the amount each shall bid for doing certain work, and that the successful bidder shall share his profits with the other, is contrary to public policy and void.

Appeal from Bowie. Tried below before Hon. J. M. Talbot.

*Glass, Esles & King,* for appellant.

*Smelser & Mahaffey,* for appellee.

TEMPLETON, ASSOCIATE JUSTICE.—The appellant, Tom Daily, and the appellee, G. J. Hollis, resides, the one in Texarkana, Texas, and the other in Texarkana, Ark., and were independent, competing, and rival contractors and builders of the said city. They were never partners, but sometimes when Hollis had a contract he sublet part of the work to Daily.

The Pintsch Compressing Company, a corporation, desired to erect a gas plant on the Arkansas side of the city and had prepared the plans and specifications thereof, and determined to let the contract for such building to the lowest responsible bidder. For the purpose of securing offers and bids that were honestly competitive, and of thereby obtaining fair and reasonable terms, the company advertised for sealed bids for the construction of said plant; the bidder to furnish all the material necessary, except iron, and to do and perform all the work and labor required in building the plant. The bids were open to all the contractors of Texarkana and vicinity, of whom there were several besides Daily and Hollis, and the right was reserved to reject any and all bids.

Daily saw the advertisement of the Pintsch company, and applied to its agent for a copy of the plans and specifications, which he obtained and examined with a view to filing a bid for the contract. Subsequently Hollis learned of the advertisement and also sought the said agent for the same purpose. He then ascertained that Daily had the plans and specifications, and was figuring on submitting a bid. Daily and Hollis got together, and after some negotiations, reached an understanding by which it was agreed that Hollis should present a bid,

offering to take the contract at and for the sum of $3476, and that Daily should make a bid, offering to take the contract for $35 in excess of that sum. It was further agreed that in case the Hollis bid was accepted, the contract, though in the name of Hollis alone, should be performed by both Hollis and Daily, and that they should share equally in the profits of the undertaking, it was calculated that it would cost $2876 to complete the contract, leaving a net profit of $600.

In pursuance of the agreement, Daily and Hollis prepared and submitted separate and distinct bids,—one in Daily's name of $3511, and one in Hollis' name of $3476. The bids were sealed and were received by the Pintsch company and opened, along with bids of other contractors. It was found that Hollis' bid was the lowest filed and the contract was awarded to him. A written contract was thereupon entered into by Hollis and the company for the construction of the plant upon the terms of his bid.

The object of the agreement between Daily and Hollis was to prevent competition between them, and thereby secure the contract on more favorable terms, and insure to each an interest in the profits. The separate bids were made in order to preserve the appearance of rivalry and competition and in that way impose on the company, and secure the letting of the contract upon terms which might not be accepted if it was known that the bids were the result of a combination of bidders. The company knew nothing of the agreement between Hollis and Daily, and supposed that the bids of each were made in good faith and that Hollis alone was interested in the bid filed in his name.

The contract between Hollis and the company was fully and faithfully performed by the parties to it. The net profits realized by the contractor were $1097. Daily assisted Hollis in performing the contract according to the agreement between them, and thereby became entitled to one half of the said profits, if the agreement was enforceable. Hollis paid Daily $109, leaving a balance of $439.50, which he refused to pay. Daily brought this suit to recover the balance claimed by him, which he alleged amounted to $518; charging in his petition that he and Hollis were partners in the contract. Hollis denied the partnership, and pleaded substantially the facts above stated in avoidance of legal liability; his contention being that the agreement was not enforcible, because it was contrary to public policy. His view of the matter was adopted by the trial court and judgment was rendered accordingly.

If Daily and Hollis agreed to seek the contract jointly because they desired to work together, and in the belief that the association would be to their mutual advantage, and would enable them to better carry out the contract, if it should be secured, then the agreement was not illegal. If their purposes were innocent, the taking of the contract in the name of Hollis alone would not be reprehensible. But the agreement did not owe its origin to any such motive. They were rivals in business, and each of them was seeking this particular job. Neither of

them needed or wanted the aid of the other in performing the contract. The agreement was entered into for the purpose of stifling comptition between them, and by that means of securing the contract upon better terms than could have been obtained in fair and open competition. To consummate their purpose and impose on the Pintsch company, resort was had to the artifice of filing a bid in the name of Daily, and thus keep up the appearance of competition. It is useless to speculate as to whether the company was actually damaged. The intention of Daily and Hollis was to obtain an unfair advantage, and the means employed were calculated to accomplish their purpose. The improper motive underlying the agreement, and the method adopted of carrying it into effect, stamp it as essentially vicious. To uphold and approve such practices would be to encourage double-dealing and fraud, and to retard the making of desirable improvements. The law will not compel the parties to such an agreement to a fair division of the spoils of their unlawful enterprise. Acheson v. Mallon, 43 N. Y., 147; Gibbs v. Smith, 115 Mass., 592.

In James v. Fulcrod, 5 Texas, 512, two persons agreed that one of them should bid in a lot to be sold at public auction; the lot to be paid for by both, and afterwards divided between them upon lines agreed on. The agreement was upheld, as it appeared that neither of the parties wanted the whole lot, but each desired the portion he was to get under the agreement, and could get it in no other way. The purpose and effect of the agreement was not to prevent competition and no deception was practiced in carrying it out. It was declared by the court that bidders at such sales can not be permitted to enter into combinations to stifle competition, with the design of purchasing property at less than its fair value, but that they may unite in any such number as may be necessary to make the purchase advantageous to themselves, provided this junction of interests be without "dishonest motives" or injurious consequences; and it was further declared that such bidders had the right to consult and promote their own interests, but could not resort to any fraudulent artifice for that purpose.

In Flanders v. Wood, 83 Texas, 277, three architects, who had separately prepared and filed plans and specifications for the building of a courthouse, agreed that if either set of plans was accepted the amount received should be divided between them all. The agreement was approved as it was not to withdraw any of the plans, but to leave them in competition as they were. The court approved the doctrine of Acheson v. Mallon, supra, where it was held that a contract between two competitive bidders, made when they filed their bids, that they should divide the profits, was against public policy and void.

We approve the finding of the trial court that the agreement shown in this case was not consistent with a sound public policy, and that therefore the plaintiff was not entitled to recover.

The judgment is affirmed.

*Affirmed.*