## BRODAGE v. GREENWOOD et al.
### (No. 2296.)

(Court of Civil Appeals of Texas. Amarillo.
April 2, 1924. Rehearing Denied
May 7, 1924.)

**1. Appeal and error ⊚⇒931.(1)—Presumed that court found for appellee on only theory capable of sustaining judgment.**

In the absence of any findings of fact, it must be presumed that the findings were for appellee on the only theory capable of sustaining the judgment.

**2. Contracts ⊚⇒346(9)—Evidence showing different contract, than alleged, admissible under general denial.**

In an action on a contract, evidence is admissible, under general denial, to show that the contract is not as alleged by plaintiff, and that under the contract actually made plaintiff cannot recover.

**3. Mines and minerals ⊚⇒109—Evidence held to show acceptance of interest in mining company, in lieu of payment for services.**

In an action against joint-stock association to recover for services in drilling an oil well, evidence *held* to show that plaintiff had an interest in defendant, and knew terms of the contract by which his partner agreed to receive credits on assessments made by defendant, in lieu of payment. ·

**4. Joint-stock companies and business trusts ⊚⇒19—Remedy of member to recover for services rendered to company, stated.**

Member of joint-stock association could not sue it for services rendered in prosecution of joint enterprise, his remedy being to assert his claim in an accounting.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Suit by Mike Brodage against E. P. Greenwood and others, doing business as Logan Syndicate. Judgment for defendants, and plaintiff appeals. Affirmed. ·

Bonner, Bonner & Sanford, of Wichita Falls, for appellant.

Bullington, Boone & Humphrey and John B. King, all of Wichita Falls, for appellee Ard and others.

Orus O. Ross, of Wichita Falls, for appellee Langford.

Carrigan, Montgomery, Britain, Morgan & King, of Wichita Falls, for appellee Greenwood.

BOYCE, J. [1] Mike Brodage brought this suit against E. P. Greenwood and others, as partners, doing business as a joint-stock association in the name of the Logan Syndicate, to recover an amount alleged to be due for drilling an oil well. The petition is so drawn that in our opinion a recovery would have been warranted either on contract or quantum meruit. The plaintiff alleged that the services were performed by the Brodage Drilling Company, a partnership, composed of the plaintiff and F. E. Ard; that the said partnership had been dissolved and an accounting had and this account assigned to the plaintiff. The defendants answered by general denial. A trial was had without a jury, and judgment rendered for defendants.

It is undisputed that the well was drilled by the Brodage Drilling Company and that the account had been assigned to the plaintiff. There was no question as to the amount that would be payable for such services, whether that was to be determined by contract or quantum meruit. It is the appellees' contention, however, that the well was drilled under contract, which provided that payment should be made and was made by credit of the amount due for the service to the account of Ard, Brodage, and their associates, who, appellees contend were interested in the Logan Syndicate and indebted to it. The trial court filed no findings of fact; but as this is the only theory on which the judgment can be sustained it must be presumed that the finding was for the appellees on this theory.

[2] The appellants present in various ways two principal contentions: First, that the defense just stated could not be urged without special pleading; and, second, that the evidence is insufficient to sustain the judgment on such theory.

Under the first contention it is urged that the defense was in the nature of a plea of payment or offset, and so required special pleading before evidence thereof would be admissible. We hold against the appellant on this proposition. Where recovery is sought on a contract, evidence is admissible under a general denial to show that the contract is not as alleged by the plaintiff and that under the contract actually made the plaintiff is not entitled to recover. G., H. & S. A. Ry. Co. v. Henry, 65 Tex. 685; Winn v. Gilmer, 81 Tex. 345, 16 S. W. 1058; Goodwin v. Biddy (Tex. Civ. App.) 149 S. W. 739.

[3] The other question is one of fact, and its consideration requires some detailed statement of the evidence. It appears from the evidence: That the plaintiff and Ard were partners, engaged in the drilling business, under the firm name of Brodage Drilling Company; that Ard usually secured and made, in behalf of the firm, the drilling contracts; that Brodage was in charge more particularly of the actual drilling operations in the field. Ard was also a member of the Logan Syndicate, and such association made an assessment against its members to cover expenses of development. The testimony is sufficient to show, though it is conflicting on this point, that Ard agreed with the Logan Syndicate to drill this well and receive credit for "his crowd's assessment" in payment. The appellees say that Brodage was

one of this "crowd." It appears that prior to the drilling of this well the Brodage Drilling Company was drilling a well for a partnership having some of the same members as the Logan Syndicate, later formed, and struck a sand that was thought to give promise of being a good strike. Whereupon Ard and one Boger, who were with others interested in such well, told the drillers, so Ard testified, that if they would "keep quiet and give us a chance to buy the acreage," they would be given $50,000 or $10,000 apiece; there being five of the drillers, including Brodage. In other parts of his testimony Ard said that the drillers were to be given a $50,000 interest in the leases—"the boys wanted to take it in acreage instead of money." There was a consolidation of several leases, including the one on which the good prospect well was located, and their owners, and perhaps others, organized the Logan Syndicate, which then bought the leases on which the well over which this controversy arose was later drilled. Ard further testified:

"When the Logan Syndicate acreage was bought, we had a well there, and we bought this acreage, and Mr. Boger, and I had agreed to give the boys a $50,000 interest. Mr. Brodage was one of those boys. When we were buying this acreage, I explained to the boys buying the Logan Syndicate acreage that we had agreed to this and asked them to assume half of it, which they agreed to. I don't know that I explained that. He understood he was to get part of whatever profit was made out of it. That was the agreement, that the whole crowd was to have a pro rata part of whatever profits were made. Mr. Brodage understood that. He was a party to that agreement, that he was to get part of the profits out of this deal. * * * The Logan Syndicate agreed to carry half of this amount which Boger had agreed to give the boys, and that interest was carried from the time the lease was purchased. The boys wanted to take it in acreage instead of money. I don't know that I ever talked to the boys about taking acreage in the Logan Syndicate. I don't think I ever talked to Mike Brodage about it. What I figured on was that they had dug the well and had found what we thought was a good sand so that the Logan Syndicate would profit, and that they, the Logan Syndicate, should stand half the burden. That is the way I figured, and they agreed to do that. * * * The drillers were given a $25,000 interest. We gave Mr. Brodage an interest and I thought he accepted it. I don't know I ever talked to him about it; I don't know that I talked to him about the Logan Syndicate part of it. * * * I don't think he knew about it; I don't know that I explained that. He understood he was to get part of whatever profit was made out of it. * * * Mr. Brodage understood that."

Brodage denied that he was to get $10,000 or have any interest in any lease. He says

that all he knew about the drilling contract was what Ard told him and that was that the well was to be drilled under the same contract as the others they had been drilling. Ard said:

"He understood what kind of a contract we had. I couldn't say whether I did not tell him about it. The only contract we had was made by me with these people."

Ard testified, however, that the contract did not provide for "taking creddit for the price of that well instead of the money for development"; but on this point he was contradicted by other witnesses. The well was finished in August, 1920, and the evidence shows that no account for the work, or claim therefor, was presented to the Logan Syndicate, either by Ard or Brodage, until after November, 1920. In November, 1920, Brodage and Ard dissolved, and the account was assigned to Brodage. Brodage testified that a bill was then made which he handed to Ard, which he asked Ard to present to the Logan Syndicate, and that he never said anything to the Logan Syndicate about it thereafter because Ard told him they were "hard hit." In other work Brodage had been accustomed to present accounts and collect bills for service. We have concluded that the evidence is sufficient to warrant the finding that Brodage had an interest in the Logan Syndicate lease, and that the contract was as testified to by the appellees' witnesses, and that Brodage knew its terms. The court could reject as much of the testimony of the plaintiff and Ard as he disbelieved, and accept that part of their testimony which seemed to him to be reasonable. If Brodage had an interest in the Logan Syndicate lease and knew such fact it is a reasonable conclusion that Ard reported to him the terms of the agreement which he had entered into for drilling thereon. This is the most reasonable explanation of the failure of either of the parties, and particularly Brodage, to present an account for the work for so long a time after it was done and payment therefor due.

[4] If Brodage had an interest in the lease and the contract was as appellees contend, then the appellant could not recover anything in this suit, even though he and Ard and the "crowd" to whom the amount due on the drilling contract should be credited were not indebted to the Logan Syndicate for the full amount that they would be entitled to for the drilling; in such case, the plaintiff would have a claim against the partnership for such balance, which he could assert only in an accounting. Hardee v. Adams Oil Association (Tex. Civ. App.) 254 S. W. 605 (4).

Affirmed.