AMARILLO OIL CO. v. RANCH CREEK OIL & GAS CO.  (No. 2403.) *

(Court of Civil Appeals of Texas. Amarillo. Feb. 18, 1925. Rehearing Denied March 25, 1925.)

1. **Appeal and error** ⬅️742(4)—Error held not presented for review by assignment that parol evidence admissible when contract ambiguous, where case tried on theory that contract was ambiguous.

In action for breach of contract, where case was tried on theory that contract was ambiguous, proposition that parol evidence is admissible to prove intention of contract where it is ambiguous, not germane to any assignment of error predicated on ruling of court as to pleadings or introduction of evidence, presents nothing for review.

2. **Contracts** ⬅️346(2)—Party need not allege more than necessary to entitle him to recover.

Notwithstanding that plaintiff suing for breach of contract alleged that it was ready, able, and willing at all times to comply with it, it was not necessary, in order to recover, that its proof be in strict compliance with allegations, since a party need not prove more than is necessary to entitle him to recover, even though more is alleged.

3. **Gas** ⬅️13(1)—Allegation and proof as to willingness to perform essential only in fixing amount of recovery for breach of contract.

In action for breach of contract, where performance of plaintiff's obligation to furnish natural gas was rendered impossible by defendant's acts, allegation and proof of plaintiff's willingness and ability to perform was essential only in fixing amount of its recovery; no particular date having been fixed for performance.

4. **Gas** ⬅️13(1)—Jury's finding in answer to special issues held not conflicting.

In action for breach of contract under which plaintiff was to furnish gas from its well to a pipe line company, jury's finding in answer to special issues that plaintiff would have furnished gas required by pipe line had it been permitted to do so, and would have been able to furnish such amount for a period of 20 years, *held* not conflicting.

5. **Gas** ⬅️13(1)—Plaintiff, suing for breach of contract affecting third party, held not required to allege that third party willing to perform portion affecting it.

In action for breach of contract under which plaintiff was to furnish gas from its well to a pipe line company and receive a certain sum therefor from defendant, where uncontradicted evidence showed that such pipe line company, a stranger to contract in question, was willing to accept gas from plaintiff, *held*, that it was not necessary for plaintiff to allege that such company was ready and willing for plaintiff to turn its gas into its main.

6. **Gas** ⬅️13(1)—Defendant not relieved from liability for breach of contract because of act of third party.

Where plaintiff and defendant entered into a contract under which plaintiff was to furnish gas from its well to a pipe line company and receive a certain sum therefor from defendant, and acceptance of such gas by pipe line company was not made condition precedent to defendant's liability under contract, refusal of pipe line company to accept such gas would not relieve defendant from liability for nonperformance.

7. **Contracts** ⬅️346(9)—In action for breach of contract, evidence admissible under defendant's general denial to show different contract than one sued on.

In action on contract, evidence is admissible under defendant's general denial to show a different contract than one declared upon by plaintiff, and that in any event, plaintiff was not entitled to recover.

8. **Appeal and error** ⬅️173(6), 719(8)—Failure of court to submit issue as to illegality of contract sued on is fundamental error, where evidence tended to show fact of illegality.

When evidence tends to show that contract sued on is void for illegality, failure of trial court to present such issue is fundamental error, and appellate court must consider it, even in absence either of pleading setting up such illegality or of assignment presenting it in appellate court.

9. **Evidence** ⬅️437—Parol evidence rule inapplicable in suit for breach of contract, where real consideration illegal.

Where real consideration of contract, for breach of which damages are sought, is illegal, parol evidence rule does not apply, and illegal element may be proven.

10. **Contracts** ⬅️116(1)—Tendency of contract and not result or motive test in determining whether made for purpose of stifling competition.

In determining whether a contract is void as being for purpose of shielding bidding and stifling competition, tendency of such contract and not the result or motive is test.

11. **Contracts** ⬅️138(1)—Court will not enforce contract made for purpose of stifling competition.

When it appears that contract has tendency to shield bidding or stifle competition, courts will not enforce it at suit of either party, but will leave parties just where it finds them.

12. **Contracts** ⬅️126—Contracts made for purpose of influencing legislation and tending to suppress competitive bidding are contrary to public policy.

Contracts made for purpose of influencing legislation, action of commissioners' courts and other municipal bodies, and tendency of which is to suppress competitive bidding, are generally contrary to public policy and violative of anti-trust and other express statutes.

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted May 20, 1925.

13. **Monopolies** ⬠21—**Duty of trial court to submit issue as to whether contract in violation of anti trust laws where evidence tended to show such to be the fact.**

In action for breach of contract, under which plaintiff was to furnish gas from its well to a pipe line company and to receive a certain sum therefor from defendant, in which defendant alleged that such contract was illegal because made for purpose of shielding bidding and stifling competition in procuring franchise from city for furnishing it with gas, if evidence tends to sustain such contention, it is duty of trial court to submit such issue to jury.

14. **Gas** ⬠13(1)—**Measure of damages for breach of contract to pay for furnishing gas from well stated.**

In an action by plaintiff against defendant for breach of contract, under which plaintiff was to furnish gas from its well to a pipe line company, and receive a certain sum therefor from defendant, where uncontradicted evidence showed that plaintiff had no available market for gas other than that afforded by the contract, and no intrinsic value was shown, contract price of the gas, less expense of connecting well with pipe line, is proper measure of damages.

15. **Damages** ⬠6—**Rule that uncertain damages cannot be recovered inapplicable to uncertainty as to profits to be derived from performance of contract.**

The rule that damages which are uncertain or contingent cannot be recovered does not embrace an uncertainty as to value of benefit or profit to be derived from performance of contract, but uncertainty as to whether any gain or benefit at all will accrue.

16. **Damages** ⬠155—**Evidence that plaintiff suing for breach of contract might have minimized damages inadmissible under defendant's general denial.**

In action for breach of contract, fact that by exercise of reasonable diligence after defendant's breach plaintiff might have minimized its damages, is matter which must be pleaded by defendant in confession and avoidance, and evidence of any such fact is inadmissible under defendant's general denial.

On Motions for Rehearing.

17. **Contracts** ⬠354—**Jury's findings in answer to special issues held not conflicting, where one finding became immaterial by reason of evidence.**

In action for breach of contract, jury's finding in answer to special issue, that plaintiff's property was not to be burdened with restrictions which had been placed on defendant's property under its contract with another was not in conflict with another finding, that it was not intention of respective presidents of plaintiff and defendant companies, who drew up contract, that plaintiff's land was to be so burdened, where such second finding was immaterial because uncontradicted evidence showed that minds of presidents did not meet upon such question.

18. **Appeal and error** ⬠930(3)—**Not presumed that trial court found against appellant on issue which was removed from jury's consideration by trial court.**

In action for breach of contract, where exception to defendant's trial amendment, which set up alleged illegality of such contract as a defense, was sustained, and thereafter neither side tendered any issue upon it, the appellate court cannot, under Vernon's Sayles' Ann. Civ. St. 1914, art. 1985, presume that trial court found that contract was not illegal, but presumption must be that such issue was waived by both sides and disregarded by court.

19. **Monopolies** ⬠21—**Illegality of prior contract held defense in suit for breach of subsequent contract closely connected therewith.**

Where contract, for breach of which plaintiff is seeking damages, is closely connected with a prior contract, if such prior contract is in violation of the Anti-Trust Laws (Complete Tex. St. 1920, or Vernon's Sayles' Ann. Civ. St. 1914, arts. 7796, 7798), as is alleged by defendant, illegality of such prior contract is a defense in present suit.

Appeal from District Court, Potter County; R. C. Joiner, Judge.

Action by the Ranch Creek Oil & Gas Company against the Amarillo Oil Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

H. G. Hendricks and J. W. Crudgington, both of Amarillo, Sam G. Bratton, of Santa Fé, N. M., and Shell S. Bassett, of Tulsa, Okl., for appellant.

Stone & Guleke, of Amarillo, and Rowland & Bryant, of Fort Worth, for appellee.

HALL, C. J. In the fall of 1918, the Amarillo Oil Company, hereinafter called appellant, had drilled and was the owner of what is known as the Hapgood gas well. December 7, 1918, the appellant entered into a contract with P. A. Little, which, in substance, stipulates that if appellant established a gas field which produced as much as 25,000,000 cubic feet of natural gas per day, that the said Little or his assigns would build a pipe line from the field to the city of Amarillo for the purpose of marketing gas, and would pay the appellant the sum of 8 cents per 1,000 cubic feet at the well or wells for all gas so marketed. The contract conferred upon Little the preference right of purchasing all gas from the wells in the field, and further provided that, in order that Little or his assigns might be assured of sufficient territory producing as much gas as might be needed by the said Little or his assigns in supplying the market, the appellant, by a covenant running with the land, bound itself to lease to said Little 11 sections of land described in the contract, upon which the latter would have the right to prospect for gas in the event more gas

⬠For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

was needed. It was further provided that Little should be reimbursed for all reasonable expenditures by him in future development, and, in the event further gas wells were obtained, Little should have the right to connect his pipe line with any and all wells so secured, and that neither the appellant nor any assignee could sell gas from any of said wells until Little had declined to exercise his preference right to take such gas under the terms of the contract. There is a stipulation that, in the event there is a deficiency of gas at any time, then if the appellant failed or refused to make further development, that Little or his assignees would have the right to purchase gas from other parties or to prospect for gas upon any of the sections owned by appellant in addition to the 11 sections described in the contract. It was further stipulated that, if Little, in developing the field under the contract, should discover oil in paying quantities, that such oil well should become the property of appellant upon payment by it of the reasonable expense incurred in drilling said well.

Early in the year 1919 Little and his associates, including the Union Petroleum Company, which they controlled, applied to the city commission of the city of Amarillo for the purpose of entering into an agreement for a rate to be charged for gas to be thereafter furnished, and if such rate could be agreed upon, then for the granting of a franchise authorizing them to transport, distribute, and sell natural gas in said city. Further, it appears that, at the time appellant was negotiating with the city commission of Amarillo, the Ranch Creek Oil & Gas Company, hereinafter referred to as appellee, was also the owner of a well which produced a considerable quantity of natural gas for which appellee was desirous of obtaining a market. Storm Bros., at that time operating under the name of Amarillo Gas Company, were the owners of a franchise to distribute artificial gas in the city limits, and, in connection with Little and his associates, were endeavoring to have their franchise amended in order to permit them to distribute and sell natural gas, and it was contemplated that Little and his associates would acquire and obtain control of the Amarillo Gas Company if the amendment to the franchise was secured. Pending the negotiations between Little, Storm Bros., and their associates and the city council, looking to the amendment of the franchise of the Amarillo Gas Company and the fixing of a rate to be charged for natural gas, the appellant and appellee, acting through the presidents of the respective companies, executed the following contract:

"This contract entered into this day between the Amarillo Oil Company and the Ranch Creek Oil Company, to wit:

"The Amarillo Oil Company now having a contract with the Union Petroleum Company to sell their gas to said Union Petroleum Company or Pipe Line Company, and the Ranch Creek Company now having a gas well, desires to enter into this contract with the Amarillo Oil Company to furnish one-fourth of the gas to said Pipe Line Company, and to receive payment for same in that proportion, being one-fourth to three-fourths by the Amarillo Oil Company, so long as the Ranch Creek Oil Company has sufficient supply of gas to furnish that proportion. In case their supply of gas should not be sufficient, they are then to turn in such supply as they have and receive pay therefor in proportion to the amount they are able to furnish on the same basis and rates as the Amarillo Oil Company.

"Executed in duplicate this the 28th day of August, 1919. [Signed] Amarillo Oil Company, by M. C. Nobles, Pres. Ranch Creek Oil Company, by D. S. Kritser, Pres.

"This contract carries with it the same proportion of gas extracted from gas turned into said pipe line in case a plant for extracting gasoline should be established near the city of Amarillo for that purpose."

After this, appellant secured a franchise from the city. It appears that Little and his associates, in the interim, had organized and chartered a corporation known as Union Petroleum Pipe Line Company for the purpose, as may be inferred from the record, of owning and operating a pipe line from the gas field to the city limits of Amarillo. After the construction of the pipe line, the appellee proposed to appellant to connect its gas well with the pipe line. Upon refusal of appellant to permit this to be done, the appellee, as plaintiff, filed this suit in the court below, alleging that it was ready, able, and willing at all times to comply with the terms of the contract above set out, and the refusal of appellant to permit it to turn its gas into the pipe line, claiming as damages, one-fourth of all sums which the Amarillo Oil Company, as the owner of the gas field, had received from the Pipe Line Company for gas, at the rate of 8 cents per 1,000 cubic feet, to the date of the trial. It is alleged that the life of the gas wells of the two companies was not less than 25 years, and probably not more than 50 years, during which time both companies would be able to supply the Pipe Line Company with all the gas it would need for the Amarillo market.

The appellant, as defendant below, alleged that the contract of August 28, 1919, was executed by the respective presidents of the parties, and detailed the preliminary negotiations, setting out the accompanying circumstances relative to the execution of the contract as explaining the intention and meaning of the contract. It is specifically alleged that during the negotiations between Kritser, as president of appellee, and W. O'Brien, as one of its directors, on the one hand, and M. C. Nobles, defendant's president, on the other, that a few days prior to the execution of the contract Nobles present-

ed a counter proposal to Kritser and O'Brien to the effect that if any contract was made, then the leases and property of the appellee company should bear the same burdens as were then borne by the appellant company under the latter's contract with Little and his associates, and that appellee should join with appellant in said contract with Little; that when the above set out contract between the parties was made by Nobles, he believed that Kritser had accepted said proposition for the appellee company, and would join with appellant in the contract with the Pipe Line Company, and that such understanding became a part of said contract and of the consideration for its execution; that when appellant company ratified said contract, it was upon the representations of its president, M. C. Nobles, that such was the meaning, intent, and obligation thereof, and that it would not have ratified the same unless it had so believed. It is further alleged that the words "this contract" in the writing above set out were intended to mean and did mean that appellee desired to enter with appellant into the pipe line contract, and assume its share of the burdens therein imposed upon the appellant company. Appellant pleaded in the alternative that if the parties executing the contract did not intend as above alleged, then that there was no mutuality, and their minds had never met.

By a trial amendment, the appellant pleaded, in substance, that a promise to withdraw objections by appellee to the application of the Union Petroleum Company for a franchise from the city commission of Amarillo for the distribution and sale of gas in said city, coupled with appellee's promise to support said application for a franchise, was a consideration moving appellant to make the contract, which also included a promise on the part of appellee to support the granting of a franchise in a city election to be held to determine that question; that such agreements, promises, and undertakings were in violation of public policy and rendered the contract void. The trial court sustained exceptions to this trial amendment.

The controversy was submitted to a jury upon special issues which, with the answers thereto, are as follows:

"No. 1. Under the contract of date August 28, 1919, signed by the Amarillo Oil Company by its president, M. C. Nobles, and the Ranch Creek Oil & Gas Company by its president, D. S. Kritser, is it meant by said contract that the Ranch Creek Oil & Gas Company bound itself to deliver one-fourth of the amount of gas required by the Pipe Line Company or so much of said one-fourth of gas that it, the said Ranch Creek Oil & Gas Company might have, and that the Amarillo Oil Company was bound to pay to the Ranch Creek Oil & Gas Company for said gas, without any other restrictions imposed on the Ranch Creek Oil & Gas Company? Answer: Yes.

"No. 2. At the time the contract above mentioned was entered into, was it the intention of D. S. Kritser and M. C. Nobles that one-fourth of the gas by the Pipe Line Company, or so much of said one-fourth of said gas so required as the Ranch Creek Oil & Gas Company might have, should be delivered to the Pipe Line Company, without further burdening the properties of the Ranch Creek Oil & Gas Company? Answer: No.

"No. 3. In answering special issues No. 1 and 2, if you should answer each of the above special issues in the negative, then you need not answer any other special issues, but should you answer either of said special issues No. 1 or 2 in the affirmative, then answer the following:

"Has the Ranch Creek Oil & Gas Company at all times been ready, able, and willing to perform the contract of date August 28, 1919, above referred to? Answer: No.

"No. 4. Did the Amarillo Oil Company prevent the Panhandle Pipe Line Company from permitting the Ranch Creek Oil & Gas Company to turn its gas into the pipe line of said Panhandle Pipe Line Company? Answer: Yes.

"No. 5. What proportion of the gas required by the Panhandle Pipe Line Company would the Ranch Creek Oil & Gas Company have turned into said pipe line up to this date if it had been permitted so to do? Answer: One-fourth or less.

"No. 6. From and after this date, would the Ranch Creek Oil & Gas Company have supplied one-fourth of the gas required by the Panhandle Pipe Line Company, had it been permitted to do so? Answer: Yes.

"No. 7. If you answer special issue No. 6 in the affirmative, then how long would the Ranch Creek Oil & Gas Company have been able to furnish said Pipe Line Company its one-fourth of the gas required by it? Answer: Twenty years.

"If you answer special issue No. 6 in the affirmative, then answer special issues No. 8 and 9:

"No. 8. During the time the Amarillo Oil Company will be able to furnish gas to the Pipe Line Company under its contract, and the time that the Ranch Creek Oil & Gas Company will be able to furnish its one-fourth of the gas required to supply said Pipe Line Company, what amount of money will said Amarillo Oil Company have received from the said Pipe Line Company for said gas? Answer: $1,519,065.60; gasoline $51,792; total, $1,570,857.60.

"No. 9. In furnishing its one-fourth of the gas required by said Pipe Line Company for the time it will be able to so furnish said gas, what will be the expense of the Ranch Creek Oil & Gas Company in furnishing its said gas to said Pipe Line Company? Answer: $12,800."

Under its first five propositions appellant insists that there is an irreconcilable conflict between the jury's findings in answering the first and second issues. We do not so construe the findings. Considering them in the light of the record as a whole, our conclusion is that in answering the first issue the jury finds that the written contract of August 28, 1919, when considered in connection with all the surrounding circumstances, and all that was said and done by

the parties who made it, meant that appellee should furnish one-fourth of the gas required by the Pipe Line Company, or so much thereof as it could furnish, and that appellant was to furnish three-fourths of the amount required, and that appellee's property was not to be burdened or bound by the restrictions which the Little contract imposed upon appellant's lands. We cannot presume that the trial judge, by the submission of this issue, called upon the jury to construe the written contract from its four corners, and aside from the parol evidence introduced in the case with it, since that is the prerogative of the court alone. The effect of the first finding is that the contract of August 28th did not require appellee to become a party to the contract which appellant had made with Little and the Pipe Line Company. The restrictions or burdens referred to in the issue were the preference right of Little to all gas produced by wells upon appellant's land, and the right to drill more wells if necessary upon it at appellant's expense in the event lessor refused to do the necessary drilling. M. C. Nobles, representing appellant, insisted at first that appellee should grant Little the same rights with reference to its land, and O'Brien and Kritser refused to do so. The inquiry in the first issue is as to the meaning of the contract itself, as evidenced by the writing and shown by the testimony of the various witnesses. This is a material issue in the case.

The inquiry in the second issue is as to the intention of Kritser and M. C. Nobles relative to the same matter. The evidence, practically without controversy, shows that Kritser intended that appellee should furnish its one-fourth of the gas, but that its land should not be burdened by the stipulations of the pipe line contract. The testimony further shows that M. C. Nobles' intention, though not communicated to Kritser at the time the contract was signed, was to the contrary. The effect of the second finding is that both Kritser and M. C. Nobles did not intend that appellee should deliver its proportion of the gas without further burdening its property. If the court had submitted an issue inquiring as to the intention of Kritser relative to that matter, and had submitted a separate issue inquiring as to the intention of Nobles, the jury must necessarily have found that Kritser did not intend to burden appellee's land, and that Nobles intended to do so. In the form in which the issue was submitted, the jury could not find, under the evidence, that Kritser and M. C. Nobles each intended that appellee's land should be burdened. The intention of M. C. Nobles alone, even if expressed to Kritser and O'Brien, would be immaterial, and unless Kritser and O'Brien also intended the same thing, the result is that such intention on the part of Nobles

does not enter into or become a part of the contract. Since there was no common intent, the jury's finding was proper, and the court did not err in disregarding this issue in entering his judgment. It is unnecessary to discuss the other contentions urged under the first five propositions. The sixth proposition is:

"Where a written instrument is ambiguous or is shown to be ambiguous by proof of subject-matter and accompanying conditions, and where the meaning and intention of the instrument is not expressly defined, or by necessary implication made complete, which incompleteness need not appear on the face of same from inspection, parol evidence is always admissible to prove the intention and meaning of the written instrument."

[1] It may be admitted that this is correct as an abstract proposition of law, but, as suggested by appellee, it is not germane to any assignment brought forward in appellant's brief, and seems to be an immaterial contention, since the court overruled appellee's exceptions to appellant's allegations as to the meaning of the contract, and freely admitted evidence from both sides in explanation of its terms. The first special issue, as stated, authorized the jury to consider all testimony, oral and written, in their construction of the contract. Appellee's argument and statement following this proposition make no reference to any bill of exception taken to the admission or exclusion of evidence, and there is, therefore, no specification of error requiring consideration. It appears from a review of the whole record that the case was tried upon the theory that the writing of August 28th was ambiguous, or had become so because of the introduction of evidence, and in the absence of an assignment of error predicated upon some ruling of the court relative to pleadings, or introduction of evidence, no error is presented for review. However, as to the various contentions made under this proposition, we think the first finding of the jury determines all of them against the appellant.

[2, 3] What we have heretofore said disposes of propositions Nos. 7 and 7A. Under propositions numbered 10 and 10A, it is contended that because the plaintiff alleged performance of the contract upon its part, and that it has at all times been willing, ready, and able to perform, and to connect its well with the pipe line, and thereafter tenders an issue based upon said allegations, which is given by the court, that this court is bound by the theory upon which the case is tried and by the issues submitted. These propositions are urged in connection with the jury's findings numbered 3, 5, 6, and 7, supra. The substance of these findings is that appellee had not at all times been ready, willing, and able to perform the contract of August 28th, and that from the date of the contract to the date of the trial it would have turned in-

to the pipe line one-fourth or less of the total amount of gas turned in. There is evidence to sustain these findings. There is nothing in the record to indicate that time is of the essence of the contract of August 28th. While appellee alleged that it was ready, willing, and able at all times to comply with the contract, it was not necessary in order to recover that its proof should be in strict compliance with the allegations. The rule is that a party need not prove more than is necessary to entitle him to recover, even though more is alleged. Ellerd v. Murray (Tex. Civ. App.) 247 S. W. 631. The contract did not bind appellee to commence furnishing its share of the gas upon any particular date. Moreover, such failure, if any, is excusable for the reason that it is shown that appellant refused to permit appellee to turn in any gas, and before the Pipe Line Company had completed its main, notified the officers of said company not to permit appellee to connect its well with the main. This was such a breach of the contract as entitled appellee to sue for damages, and an allegation and proof of appellee's willingness and ability to perform was essential only to fixing the amount of its recovery. Fink v. St. Augustine Co. (Tex. Civ. App.) 167 S. W. 35; El Paso & S. W. R. Co. v. Eichel & Weikel (Tex. Civ. App.) 130 S. W. 940; National Equitable Society v. Tennison (Tex. Civ. App.) 174 S. W. 978; Miller v. Hodges (Tex. Com. App.) 260 S. W. 168.

[4, 5] The jury found in answer to the sixth and seventh issues that from and after the date of the trial, appellee would have furnished one-fourth of the gas required by the Pipe Line Company had it been permitted to do so, and would have been able to furnish such amount for a period of 20 years from the date of the trial. There is no conflict between these findings, and they are supported by the evidence. What is here said also disposes of the eleventh proposition. Under the twelfth proposition it is insisted that because the appellant had a contract with the Pipe Line Company, that said Pipe Line Company must necessarily become a party to the contract sued upon, and because the appellee failed to allege that the Pipe Line Company was ready and willing for appellee to turn its gas into the main, that the pleading is bad on general demurrer. The effect of the jury's first finding is that the Pipe Line Company is a stranger to the contract of August 28th, and we think this is a correct finding, even though the writing is construed aside from any light shed upon it by parol evidence. The uncontradicted evidence shows that the Pipe Line Company had no objection to appellee turning its gas into the main, and rather indicates that it favored such action. It is clear that its gas would have been turned in but for the objections of appellant through

its president, M. C. Nobles, who insisted that it must not be done until appellee had become a party to the pipe line contract. Appellee had no contract of any kind with the Pipe Line Company. Its right to turn in any gas rested solely upon the contract of August 28th with appellant. The reasonable inference from the fact that appellant had by contract given appellee the privilege of turning in gas is that appellant was fully authorized by the Pipe Line Company to take gas from the appellee. As we construe the contract, appellee was not to furnish gas to the Pipe Line Company, but to appellant, and to receive from appellant 8 cents per 1,000 cubic feet for all gas so furnished. There is nothing in the record to indicate that the Pipe Line Company could be held liable for the value of any gas so furnished.

[6] Driscoll testified that appellee's well would have been connected with the pipe line but for the objection of appellant. We cannot assume that appellant would make a contract, incidentally affecting the property rights of a third party, without first having obtained the consent of such party. Appellee had the right to presume that such consent had been obtained. It was not, therefore, necessary for appellee to allege that fact. If appellant had bound itself to receive from appellee and pay for one-fourth of all the gas which is furnished to the Pipe Line Company, and the latter had refused to take such gas, appellant would, nevertheless, be liable for damages for breach of the contract. The acceptance of the appellee's gas by a stranger, the Pipe Line Company, was not made a condition precedent to appellant's liability under the contract, and, in the absence of such a stipulation, the refusal of the Pipe Line Company, a third party, to take the gas would not relieve appellant from liability for nonperformance. Impossibility of performance, caused by an act of a third party, does not excuse the defendant. Gulf Refining Co. v. Pagach Bros. (Tex. Civ. App.) 146 S. W. 719; Gravel Switch, etc., Co. v. Lebanon Tel., etc., Co., 139 Ky. 151, 129 S. W. 559; Danenhower v. Hayes, 35 App. D. C. 65, 33 L. R. A. (N. S.) 698; McNeill v. Reed, 9 Bing. 68; Stone v. Dennis, 3 Port. (Ala.) 231; Wareham Bank v. Burt, 5 Allen (Mass.) 113; Cobb v. Harmon, 23 N. Y. 148; Van Etten v. Newton, 15 Daly, 538, 6 N. Y. S. 531, 7 N. Y. S. 663, 8 N. Y. S. 478; 3 Elliott on Contracts, § 1916; Williston On Contracts, § 1932.

It is contended under the thirteenth and fourteenth propositions that the real consideration moving to appellant for the contract of August 28th was the fact that the stockholders in appellee company withdrew their opposition to the granting of appellant's franchise, and the fixing of favorable rates for gas by the city commission, and the further promise on the part of such stockhold-

ers to actively support, by their influence, the grant of a franchise and rates at an election to be thereafter held in the city for the confirmation and approval of the city commission's action. As stated, this issue was not submitted to the jury, and we cannot presume, under article 1985, Vernon's Sayles' Ann. Civ. St. 1914, that the trial court found adversely to appellant upon the issue, for the reason that his ruling upon the exceptions to appellant's trial amendment setting up the alleged illegality, shows that he eliminated it from the case. Kirby Lumber Co. v. Conn. (Tex. Sup.) 263 S. W. 902. If such an agreement was made between the parties, and it is, as a matter of law, illegal, then the parties are in pari delicto. It is unnecessary for us to consider the alleged error of the court in sustaining the exceptions to the trial amendment, because the evidence, without contradiction, shows that the stockholders of appellant and the Pipe Line Company, prior to the execution of the written contract, were negotiating with the city commission for a franchise and for the fixing of favorable rates for the sale of gas to consumers in the city, and it is further shown that appellee was desirous of selling the gas from its well upon the same market, and was in competition with appellant, and opposing the granting of appellant's franchise, and had succeeded in delaying action by the commission upon appellant's application, and was also threatening to apply for a franchise in behalf of appellee.

[7, 8] There is evidence tending to sustain the contention that if appellee was permitted to furnish one-fourth of the gas, its stockholders would use their influence in behalf of appellant's franchise at an election thereafter to be held in the city upon the question of approving the commission's action in granting appellant its franchise. If such an agreement is contrary to public policy, the evidence is sufficient to have required the court to submit the issue to the jury, even in the absence of any pleading raising the issue, and the failure of the court to do so presents fundamental error. The general rule is that in an action upon a contract, evidence is admissible in defendant's behalf under a general denial to show another and different contract to the one declared upon by plaintiff, and that, in any event, plaintiff was not entitled to recover. Brodage v. Greenwood (Tex. Civ. App.) 261 S. W. 453; Smith v. Bowen, 45 Tex. Civ. App. 222, 100 S. W. 796. Moreover, it seems to be settled law in this state that when the evidence tends to show that the contract sued upon is void for illegality, the matter is fundamental, and it is the duty of the appellate courts to consider it in the absence either of pleading setting up such illegality or of an assignment presenting it in the appellate court, and that, too, whether it is malum in se or malum pro-

hibitum. Bishop v. Japhet (Tex. Civ. App.) 171 S. W. 499; Keith v. Fountain, 3 Tex. Civ. App. 391, 22 S. W. 191; T. & P. Coal Co. v. Lawson, 89 Tex. 394, 32 S. W. 871, 34 S. W. 919; Willis v. Weatherford (Tex. Civ. App.) 66 S. W. 473; Pasteur Vaccine Co. v. Burkey, 22 Tex. Civ. App. 232, 54 S. W. 804; G., C. & S. F. Ry. Co. v. Buckholts (Tex. Civ. App.) 258 S. W. 491; Chaddick v. Sanders (Tex. Civ. App.) 250 S. W. 722; Mullin v. Nash-El Paso Motor Co. (Tex. Civ. App.) 250 S. W. 472; Balaguer v. Macey (Tex. Civ. App.) 238 S. W. 322; Reed v. Brewer, 90 Tex. 144, 37 S. W. 418; Edwards v. Jennings, 89 Tex. 618, 35 S. W. 1053. In addition to the testimony of O'Brien and M. C. and H. A. Nobles, tending to show that such an agreement existed, the record discloses that appellant's wells produced a great deal more gas than was needed to supply the city of Amarillo. The first inquiry is, does an agreement based upon such a consideration avoid the contract as being contrary to law and public policy?

[9] The only consideration apparent from the face of the writing of August 28th moving appellant to take one-fourth of the gas to be used by it from appellee, and pay 8 cents per 1,000 cubic feet therefor, was the turning of that proportion of gas into the main from appellee's well, and if such one-fourth was not needed by appellant in fulfilling its contract with the Pipe Line Company, then it may be reasonably inferred that the above-stated promises, undertaking, and agreement not to bid constitute the real consideration for, and are the foundation of, the contract. It is shown that the writing of August 28th is only a part of the contract, and, although the agreement to furnish one-fourth of the gas or less as therein expressed, may be, in its nature, a contractual consideration, still it is uniformly held that when the real consideration is illegal, the parol evidence rule does not apply, and the illegal element may be proven. Sanger v. Miller, 26 Tex. Civ. App. 111, 62 S. W. 425; Donley v. Tindall, 32 Tex. 43, 5 Am. Rep. 234; W. T. Rawleigh Co. v. Smith (Tex. Civ. App.) 231 S. W. 799; Caddell v. J. R. Watkins Medical Co. (Tex. Civ. App.) 227 S. W. 226; Fenter v. Robinson (Tex. Civ. App.) 230 S. W. 844.

[10, 11] It is not shown that the agreement resulted in the city commission fixing a higher rate per 1,000 cubic feet for the gas which appellant has been selling to consumers in Amarillo, but unquestionably such is the tendency of a contract made for the purpose of chilling bidding and stifling competition. The tendency of such an agreement, and not the result or motive, is declared to be the test of its legality. When it appears that such a contract has been made, the courts will not enforce it at the suit of either party, but will leave them just where it finds them. While cases may be found to the

contrary, the courts of this state have uniformly adopted this rule, which is in accord with the great weight of authority elsewhere. The rule which governs in such cases is clearly stated in 2 Dillon on Municipal Corporations, §§ 774 and 781, as follows:

"It is the tendency of judicial decision to discountenance all attempts to influence the deliberations and determinations of public bodies and officers other than by arguments, which, being openly made, bear directly upon the merits of a pending measure or application, because in contravention of sound public policy. A contract founded on a violation of this wholesome rule of law is illegal, and the court will not lend its aid to a party seeking its enforcement, but will declare the contract void, leaving the parties to it in the position in which they placed themselves. In determining the validity of contracts to influence legislative action, the court has said that it is not necessary to adjudge that the parties stipulated for corrupt action, or that they intended that secret and improper resorts should be had. It is enough that the contract tends directly to those results; that it furnishes a temptation to the plaintiff to resort to corrupt means or improper devices to influence legislative action, and that it tends to subject the Legislature to influence destructive of its character and fatal to public confidence in its action.

"Arrangements and combinations among those prepared and expecting to become bidders at the letting of contracts by a municipality, to prevent competition between themselves and to bring about an award at a figure which is not the result of an honest competition, are contrary to public policy and void. Such contracts are illegal in their nature and tendency, and for that reason no inquiry is necessary as to the particular effect of any one contract, because it would not alter the general nature of the contract or the force of the public policy which condemns them. These principles apply to all combinations and agreements between intending bidders which have the tendency or effect of restricting or limiting competition, whether such contracts be in the nature of an agreement between two or more bidders that one bidder shall refrain from bidding in competition with the other, or that bids shall be put in upon terms previously arranged between the parties; and, whether the consideration be an agreement to share the profits of the successful bidder or a sum paid in hand to secure the withdrawal of the bid. All such contracts and agreements are in violation of public policy." James v. Fulcrod, 5 Tex. 512, 55 Am. Dec. 743; Aycock v. Braun, 66 Tex. 20, 18 S. W. 500; Daily v. Hollis, 27 Tex. Civ. App. 570, 66 S. W. 586; Houston Ice & Brewing Co. v. Sneed, 63 Tex. Civ. App. 17, 132 S. W. 386; City of Wichita Falls v. Skeen, 18 Tex. Civ. App. 632, 45 S. W. 1037; City National Bank v. Corpus Christi (Tex. Civ. App.) 233 S. W. 375; Hall v. Bank (Tex. Civ App.) 255 S. W. 506; McMullen v. Hoffman, 174 U. S. 654, 19 S. Ct. 839, 43 L. Ed. 1117; Ray v. Mackin, 100 Ill. 246; Gibbs v. Smith, 115 Mass. 592; Chippewa Valley Ry. Co. v. Chicago, St. P., M. & O. Ry. Co., 75 Wis. 224, 44 N. W. 17, 6 L. R. A. 605; Kuhn v. Buhl, 251 Pa. 348, 96 A. 977, Ann. Cas. 1917D, 415.

[12] Contracts made for the purpose of influencing legislation, the action of commissioners' courts and other municipal bodies, and elections looking to the granting of rights, privileges, and franchises, the tendency of which is to put an end to rivalry and suppress competitive bidding between those seeking such grants, are, as a general rule, contrary to public policy, and in many cases are violative of anti-trust and other express statutes. In addition to the wealth of authorities cited in appellant's brief sustaining the rule, we cite the following Texas cases: Flanders v. Wood, 83 Tex. 277, 18 S. W. 572; San Antonio Gas Co. v. State, 22 Tex. Civ. App. 118, 54 S. W. 289; Jageman v. Necco (Tex. Civ. App.) 59 S. W. 822; Flynn v. Bank, 53 Tex. Civ. App. 481, 118 S. W. 848.

[13] If the evidence upon another trial indicates that the contract of August 28th is in violation of the anti-trust laws, or any other express statute of this state, the courts should submit the issue to the jury.

[14] It is contended under the next proposition that special issues Nos. 6 and 8 do not submit the proper measure of damages, because it permits the plaintiff to recover the value of one-fourth of the gas which it was prevented from turning into the pipe line, when the measure of damages against a purchaser who refuses to accept the property sold is the difference between the contract price and the market value. Under the pleadings and evidence we think no error is shown here. Kritser testified that he did not know of any available market for the gas other than that afforded by turning it into the pipe line. This testimony is uncontradicted, and if there was no market for its gas and no intrinsic value was shown, the contract price of the gas, less the expense of connecting the well with the pipe line, is the proper measure of recovery. There was no contract between the parties to sell the well or the lease owned by appellees and, therefore, the value of the well or the lease could not enter into the question of the measure of damages. Such damages are recoverable in cases of this character as will put the injured party in as good position, pecuniarily, as he would have been if the contract had been performed. Daughetee v. Ohio Oil Co., 263 Ill. 518, 105 N. E. 308; Miller v. Robertson, 45 S. Ct. 73, 69 L. Ed. —; Andrus v. Hornsby (Tex. Civ. App.) 238 S. W. 314; Grand Prairie Gravel Co. v. Wills Co. (Tex. Civ. App.) 188 S. W. 680.

[15] Plaintiff cannot be denied a recovery upon the ground of uncertainty in his claim for damages. The rule that damages which are uncertain or contingent cannot be recovered does not embrace an uncertainty as to the value of the benefit, profit, or gain to be derived from performance of the contract, but an uncertainty or contingency as to whether any gain or benefit at all will ac-

crue. Fraser v. Milling Co. (Tex. Civ. App.) 28 S. W. 715; Grand Prairie Gravel Co. v. Wills Co., supra; Merchants' Life Insurance Co. v. Griswold (Tex. Civ. App.) 212 S. W. 807-812; Osage Oil & Refining Co. v. Fawn Oil Co. (Tex. Civ. App.) 230 S. W. 518.

[16] The fact that by the exercise of reasonable diligence, after appellant's breach, the appellee might have minimized its damages in any way, is a matter which must be pleaded by the defendant in confession and avoidance, and evidence of any such fact is inadmissible under a general denial. Wold's Special Film Corp. v. Fitchenberg (Tex. Civ. App.) 176 S. W. 733; Denby Motor Truck Co. v. Mears (Tex. Civ. App.) 229 S. W. 994; Panhandle & S. F. Ry. Co. v. Norton (Tex. Civ. App.) 188 S. W. 1011.

Because the court erred in failing to submit to the jury the issue of the illegality of the contract, the judgment is reversed and the cause is remanded.

JACKSON, J., not sitting.

## On Motions for Rehearing.

HALL, C. J. [17] The appellant contends that this court erred in the interpretation of the jury's finding upon issue No. 1, for the reason that the record shows that such finding, when taken in connection with the finding upon issue No. 2, was an interpretation of the contract upon its face, outside the jury's province, and in further holding that the second issue was immaterial. The first issue asked the jury to find what is meant by the contract, meaning of course, the writing considered in connection with the verbal testimony introduced by both sides and throwing light upon it. The meaning of the contract, of course, is the kernel. The second issue, inquiring as to the intention of D. S. Kritser and M. C. Nobles relative to burdening the property of appellee, might be material if they had a common purpose, but the evidence shows that Kritser intended one thing and Nobles another. Since their minds did not meet upon that proposition, the intent of either opposed to the other never became a part of the contract, and the issue is wholly immaterial. If the jury had answered issue No. 2 in the affirmative, their finding would have been in the face of all the evidence, which showed that both O'Brien and Kritser always refused to burden appellee's land. The manner in which the issue was framed could not, under the evidence, have been answered otherwise than in the negative.

[18] Appellee insists that under Vernon's Sayles' Ann. Civ. St. 1914, art. 1985, we should presume that the court found that the contract was not contrary to public policy. In addition to what has been said in the original opinion upon this contention, we cite the following cases in which the Supreme Court, the Commission of Appeals, and various Courts of Civil Appeal have modified the rule contended for, and which sustain the holding of this court that the statutory presumption should not be indulged in this case: Texas City Transportation Co. v. Winters (Tex. Com. App.) 222 S. W. 541; Railway Co. v. Price (Tex. Com. App.) 240 S. W. 528; Boatner v. Insurance Co. (Tex. Com. App.) 241 S. W. 136; Kistler v. Latham (Tex. Com. App.) 255 S. W. 984; San Antonio Public Service Co. v. Tracy (Tex. Civ. App.) 221 S. W. 638; Texas Drug Co. v. Caldwell (Tex. Civ. App.) 237 S. W. 976; Railway Co. v. Wagner (Tex. Civ. App.) 262 S. W. 917.

[19] Appellee sets out several allegations found in appellant's pleadings, to the general effect that there was an agreement between them that appellee should withdraw its opposition to the effort of appellant and the Amarillo Gas Company and the Pipe Line Company, which were also interested, to procure a favorable market price for the sale of their gas and the approval of a franchise at the city election, and insists because of the presence of these allegations and the introduction of some testimony tending to show an illegal contract, that the statutory presumption must obtain. We do not assent to this. When the court subsequently sustained an exception to the trial amendment, filed for the sole purpose of setting up the illegality of the agreement as a defense, and thereafter neither side tendered any issue upon it, we cannot, under the above authorities, presume that the court found against appellant under the above-named statute. The presumption, according to the above cited authorities, must be that the issue was waived by both sides and disregarded by the court. The record shows that J. J. Currie, a Ranch Creek stockholder, who was present at one of the joint meetings, had stated that the consideration for the written contract was that the Ranch Creek people were to help appellant get the franchise. The fact that appellant did not call Currie as a witness and did not stress the question of the illegality of the contract, either in the examination or cross-examination of any witness is to our minds conclusive that the point was not urged and presumably because of the court's action in striking the trial amendment upon exception. The appellant insists in its motion that the contract in question is void for the further reason that its performance would be in aid of the contract previously made between the appellant and the Pipe Line Company, and that the pipe line contract violates the provisions of the antitrust statute of this state. The record shows clearly that the Ranch Creek people were familiar with the provisions of the previously existing contract between appellant and the Pipe Line Company. That contract con-

tained, amongst others, the following provisions:

"(8) That the Pipe Line Company—for whose benefit this contract is made—is to have the first or prior right to take, at the price and upon the terms herein stipulated, all gas produced. from the lands owned or leased and all that may be acquired by deed or lease and controlled by first party or its assigns and located in said fields in Potter county and adjoining counties sufficient to supply Amarillo and vicinity, and first party is to have first and prior right to furnish gas to such pipe line, and the Pipe Line Company is bound to take it at said rate from the first party to the exclusion of all others, gas produced by first party's wells, up to the capacity of the pipe line or the consumption in the city of Amarillo and vicinity. The party of the first part reserves the right to sell all gas produced above the requirements of the party of the second part as stated in this contract, conditioned that the wells shall not be drawn upon to an amount such as to impair the production of said wells as applied to this contract and its obligations, the object being the proper conservation of the gas. * * * In the event the assignee develops gas in paying quantities, the Pipe Line Company shall have the prior right to connect its pipe line with said well or wells, paying therefor the rate stipulated herein, and such assignee or assignees will not have the right to sell the gas from the wells so developed by him until said Pipe Line Company has refused and failed to exercise its preference to take the gas from said well according to the terms of this contract."

We strongly incline to the opinion that this contract violates the spirit and the letter of the Anti-Trust Statutes of this state. Said statutes are in part, as follows: Complete Tex. St. 1920, pp. 1340, 1341, or Vernon's Sayles' Ann. Civ. St. 1914, art. 7796, subd. 1:

"To create, or which may tend to create, or carry out restrictions in trade, or commerce or aids to commerce or in the preparation of any product for market or transportation, or to create or carry out restrictions in the free pursuit of any business authorized or permitted by the 'laws of this state." Id. art. 7796, subd. 3.

"To prevent or lessen competition in the manufacture, making, transportation, sale or purchase of merchandise, produce or commodities, * * * or to prevent or lessen competition in aids to commerce, or in the preparation of any product for market or transportation." Id. art. 7798, subd. 1.

"Where any two or more persons, firms, corporations or associations of persons, who are engaged in buying or selling any article of merchandise, produce or any commodity, enter into an agreement or understanding to refuse to buy from or sell to any other person, firm, corporation or association of persons, any article of merchandise, produce or commodity."

It is true that the Pipe Line Company was not a party to this suit, but the record shows that at great expense, it was about to construct a pipe line from the gas field, more than 20 miles away, to the corporate limits of Amarillo, where it would be connected with the pipes of the company organized to distribute the gas to the consumers in said city. The making of the contract between the parties to this action, as shown by the writing itself, was based upon the existence of the contract which appellant had with the Pipe Line Company. If the latter contract violates the anti-trust statutes of this state, then, as we understand the general rule, its illegality is a defense to this suit filed by appellee based upon its contract. The rule which governs in such cases is stated in 13 C. J. 509, § 460, as follows:

"Where a contract grows immediately out of, and is connected with a prior illegal contract, the illegality of such prior contract will enter into the new contract and render it illegal, and the rule has been broadly laid down that if the connection between the original illegal contract and the new contract can be traced, and that if the latter is connected with and grows out of the former, no matter how many times and in how many different forms it may be renewed, it cannot form the basis of recovery, so if any agreement in furtherance of, or for the purpose of carrying into effect any of the unexecuted provisions of a previous illegal agreement, is likewise illegal and void, as in a contract, the performance of which depends on the performance of a prior invalid contract."

The text is supported by numerous authorities, amongst them, Shelton v. Marshall, 16 Tex. 344; Reed v. Brewer (Tex. Civ. App.) 36 S. W. 99. The rule of law under consideration was discussed in Pennsylvania Rubber Co. v. McClain (Tex. Civ. App.) 200 S. W. 586, in which the court said:

"The statute in question expressly declares that an agreement * * * between two persons that one of them will buy from the other exclusively a given commodity, or that one of them will sell exclusively to the other a given commodity, constitutes a conspiracy in restraint of trade. An agreement to do either or both has the effect to prevent competition, and falls within the condemnation of the statute."

See, also, Columbia Carriage Co. v. Hatch, 19 Tex. Civ. App. 120, 47 S. W. 288; Pasteur Vaccine Co. v. Burkey, 22 Tex. Civ. App. 233, 54 S. W. 804; Star Mill & Elev. Co. v. Forth Worth Grain & Elev. Co. (Tex. Civ. App.) 146 S. W. 604; Wood v. Texas Ice & Cold Storage Co. (Tex. Civ. App.) 171 S. W. 497; Armstrong v. W. T. Rawleigh Medical Co. (Tex. Civ. App.) 178 S. W. 582; Carroll v. Evansville Brewing Association (Tex. Civ. App.) 179 S. W. 1099. A reasonable inference from the record is that at the time of the contract in question, Amarillo and vicinity was the only available market for the gas in this particular field, and the ex-

istence of the pipe line contract, when supplemented by the granting of a franchise, necessarily results in a monopoly under its exclusive contract. These facts suggest the motive impelling appellee to force appellant, by competitive bidding and opposition to the franchise, to take gas from its well, and, as stated in the original opinion, the suppression of this opposition appears to be the only consideration moving appellant to enter into the contract, because the evidence shows that it had more than enough gas of its own to supply the available market. A similar situation is presented in Houck v. Anheuser Brewing Association (Tex. Civ. App.) 27 S. W. 692; Id., 88 Tex. 184, 30 S. W. 869. In that case Houck & Deiter and Schloss & Howley associated themselves together for the purpose of monopolizing the beer trade of El Paso. The Supreme Court held that such contract was in violation of the Anti-Trust Act. The Brewing Association was selling beer to said parties, and had agreed that it would not sell its beer to any other person in El Paso. This last contract was declared to be void; because it tended to aid and promote a monopoly created by the original contract between Houck and his associates.

It appears in the record that the two contracts here discussed are closely connected. Appellee was to be paid for its one-fourth of the gas out of the proceeds to be collected under the pipe line contract. If the last-named contract is void, then, under the last-mentioned case, the contract in question is also void. As heretofore stated, the validity of the contract, either as against public policy or the anti-trust statutes was only incidentally involved and disclosed during the trial. There is no evidence in the record touching the validity of the pipe line contract, except the contract itself and the reference made to it orally and in the original contract of August 28th.

There may not be sufficient evidence in the record to show that either contract is void as malum in se and malum prohibitum with such certainty as would warrant this court in reversing and rendering the judgment, but we are convinced that the dearth of such evidence resulted from the action of the court in ruling out the trial amendment, and thereby indicating that direct evidence of such facts would not be admitted. However, the illegality of the contract in question has been pleaded and repeatedly referred to incidentally by more than one witness, and we therefore conclude that the judgment should be reversed and the cause remanded, in order that this phase of the litigation may be fully developed upon a retrial.

The motions for rehearing are overruled.

JACKSON, J., not sitting.